ATTORNEY FOR APPELLANT
Stephen M. Wagner
Wagner Reese, LLP
Carmel, Indiana

ATTORNEYS FOR APPELLEE
Kevin C. Schiferl
Lucy R. Dollens
Vanessa A. Davis
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE

THETA CHI FRATERNITY, INC.
Gary A. Watt
Michael C. Osborne
Tiffany J. Gates
Archer Norris, PLC
Walnut Creek, California

Cynthia E. Lasher
Norris Choplin Schroeder LLP
Indianapolis, Indiana

THE NORTH-AMERICAN
INTERFRATERNITY CONFERENCE
Bryan H. Babb
Bose McKinney & Evans, LLP
Indianapolis, Indiana

James B. Ewbank, II
Ewbank & Harris, P.C.
Austin, Texas

23 NATIONAL AND NATIONAL
WOMEN'S GROUPS
Jeffrey A. Musser
Rocap Musser LLP
Indianapolis, Indiana

Sean P. Callan
Timothy M. Burke
Manley Burke, LPA
Cincinnati, Ohio

INDIANA TRIAL LAWYERS ASSOC.
Timothy J. Vrana
Timothy J Vrana LLC
Columbus, Indiana

# In the
# Indiana Supreme Court



No. 54S01-1405-CT-356

STACY SMITH AND ROBERT SMITH,                     *Appellants (Plaintiffs),*
    INDIVIDUALLY AND AS CO-PERSONAL
    REPRESENTATIVES OF THE ESTATE OF
    JOHNNY DUPREE SMITH, DECEASED,

v.

DELTA TAU DELTA, INC.                                          *Appellee (Defendant),*

and

BETA PSI CHAPTER OF DELTA TAU DELTA,
WABASH COLLEGE,
THOMAS HANEWALD, AND
MARCUS MANGES,                                                      *(Defendants).*

Appeal from the Montgomery Superior Court, No. 54D01-1009-CT-346
The Honorable Donald L. Daniel, Special Judge

**May 28, 2014**
**Corrected**


**Dickson, Chief Justice.**


After the acute alcohol ingestion death of their 18-year-old son, Johnny Dupree Smith, a freshman pledge of the Beta Psi Chapter of Delta Tau Delta fraternity at Wabash College, the plaintiffs, Stacy Smith and Robert Smith, brought this wrongful death action against Delta Tau Delta (the national fraternity)[1]; its Wabash College local affiliate chapter—Beta Psi Chapter of Delta Tau Delta (the local fraternity); Wabash College; and Thomas Hanewald and Marcus Manges. The trial court granted the national fraternity's motion for summary judgment and, finding no just reason for delay, entered a judgment in favor of the national fraternity, thus permitting the plaintiffs to bring this appeal as to the national fraternity. Ind. Trial Rule 54(B). The Court of Appeals affirmed in part but reversed the trial court's grant of summary judgment. Smith v. Delta Tau Delta, 988 N.E.2d 325 (Ind. Ct. App. 2013). We now grant transfer to examine the issues presented in light of our recent decision in Yost v. Wabash College, 3 N.E.3d 509 (Ind. 2014), which presented factual similarities and related questions of law.


In the present case, as to the national fraternity, the plaintiffs' amended complaint presents three theories of liability. Count I claims negligence per se for engaging in hazing in violation of Indiana Code section 35-42-2-2. Count II alleges negligence in furnishing alcoholic beverages to a minor, in violation of Indiana Code sections 7.1-5-7-8 and 7.1-5-10-15.5. Count III asserts a claim of negligence based upon breaches of an assumed duty (a) to protect freshman pledges from hazing and excessive alcohol consumption, (b) to protect freshman pledges from the reasonably foreseeable criminal acts of third parties, and (c) to render aid to the plaintiffs' decedent after it became clear that he could not care for himself. The plaintiffs' claims in each of

---

[1] Delta Tau Delta, Inc. is a not-for-profit corporation incorporated in New York that maintains its headquarters in Fishers, Indiana. It grants charters to local fraternities in the United States and Canada.

these counts are predicated on the alleged negligence of the national fraternity "through [its] agents and officers." Appellants' App'x at 153.

The national fraternity's motion for summary judgment asserts that there are no genuine issues of material fact and (1) that the individual members of the local chapter were not acting as agents of the national fraternity and thus it is not liable for the actions of the individual members of the local chapter with respect to any of the counts; (2) that there is no allegation or evidence that the national fraternity itself furnished alcoholic beverages or knew that the plaintiffs' decedent was visibly intoxicated; (3) that the national fraternity did not assume any duty to control the hazing and alcohol consumption at the local chapter; and (4) that the plaintiffs' decedent was more than 50% at fault for his own death as a matter of law, precluding the recovery of damages under the Indiana Comparative Fault Act. *See* Ind. Code § 34-51-2-1 *et seq.*

The trial court granted the motion for summary judgment without accompanying findings of fact or conclusions of law, neither of which are required nor prohibited in ruling on summary judgment motions. City of Gary v. Ind. Bell Tel. Co., 732 N.E.2d 149, 153 (Ind. 2000). Challenging the grant of summary judgment, the plaintiffs' appeal asserts two principal claims: (1) that the trial court erred in denying the plaintiffs' motion to strike part of the evidence designated by the national fraternity and (2) that genuine issues of material fact prevent summary judgment as to whether the national fraternity assumed a duty to protect the local chapter pledges and as to whether the national fraternity is vicariously liable for the negligence of the officers and representatives of the local chapter. Appellants' Br. at 1.

### 1. Motion to Strike Designated Evidence

On appeal, the plaintiffs first challenge the trial court's denial of their motion to strike an affidavit and two purported interview transcriptions designated as evidentiary material by the national fraternity.

A party seeking summary judgment may submit "supporting affidavits" and must designate pleadings, discovery responses, and such other "evidentiary matter [showing] that there is

3

no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." T.R. 56(C). The rule contemplates the submission of supporting and opposing affidavits made on personal knowledge and setting forth facts that would be admissible in evidence and that show the affiant is competent to testify thereon. T.R. 56(E). To support its motion, the national fraternity designated four items. First, it designated specific rhetorical paragraphs of the plaintiffs' amended complaint. The second item was the affidavit of James B. Russell, Executive Vice President of the national fraternity. The third and fourth designated items were each identified as a "Crawfordsville Police Department Interview:" the first of Stevan Stankovich and the second of Alan Tom. The plaintiffs sought to strike the Russell affidavit because it "directly contradicts his later deposition testimony on numerous key points" and to strike the two purported Crawfordsville Police Department interviews because they are hearsay and "unsworn, unverified, and unauthenticated statements." Appellants' App'x at 82. The trial court denied the plaintiffs' motion to strike.

To support their claim of trial court error in failing to grant their motion to strike the Russell affidavit, the plaintiffs assert that when particular aspects of an affidavit "contradict the affiant's deposition testimony, the contradictory portions of the affidavit should be stricken." Appellants' Br. at 20; *see also* Appellants' App'x at 83. For this proposition, the plaintiffs cite Hayes v. Trustees of Indiana Univ., 902 N.E.2d 303 (Ind. Ct. App. 2009), *trans. denied*; Chance v. State Auto Ins. Cos., 684 N.E.2d 569, 571 (Ind. Ct. App. 1997), *trans. denied*; and Kroger Co. v. Plonski, 930 N.E.2d 1 (Ind. 2010). Appellants' Br. at 20. The plaintiffs did not otherwise challenge the nature, form, or content of the affidavit, nor the competency or knowledge of its affiant.

We find the cited authorities do not support the plaintiffs' argument. In Hayes, the Court of Appeals upheld the striking of portions of the plaintiff's affidavit because it contradicted her sworn deposition testimony, citing the principle that "a genuine issue of material fact may not be created by submitting an affidavit that contradicts *earlier* sworn statements." 902 N.E.2d at 311 (emphasis added) (citing Morgan County Hosp. v. Upham, 844 N.E.2d 275, 281 (Ind. Ct. App. 2008), *trans. denied*). Hayes does not specifically state whether the deposition preceded or followed the affidavit. The plaintiffs' second cited authority, Chance, disregarded a party's subse-

4

quent contradictory statement, holding that a "party cannot create an issue of material fact for summary judgment purposes by contradicting a *prior* sworn statement."  684 N.E.2d at 571 (emphasis added).  Kroger, which found trial court error in the granting of a motion to strike a party's affidavit, does not hold to the contrary.  930 N.E.2d 2d at 5–6.

The seminal Indiana case addressing this issue is Gaboury v. Ireland Rd. Grace Brethren, Inc., in which we found the following principle "well reasoned:"

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

446 N.E.2d 1310, 1314 (Ind. 1983) (quoting Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)).  In the present case, the Russell affidavit, when signed and filed, did not contradict any prior testimony of Russell.  The affidavit was signed on July 22, 2011, and submitted with the national fraternity's motion for summary judgment, which was filed on July 29, 2011.  Four months later, on December 11, 2011, the plaintiffs took Russell's deposition.

In support of their motion to strike at the trial court, the plaintiffs acknowledged the timing was reversed and presented "the opposite situation" from the Indiana case law that had permitted *subsequent* affidavits to be stricken, but urged the earlier Russell affidavit be stricken here because of the contradictory statements in the subsequent deposition testimony.  Appellants' App'x at 83.

Clearly, the affidavit was not crafted to contradict any then-existing testimony from Russell.  Furthermore, the challenged affidavit was not submitted by the non-movants, the plaintiffs, to raise an issue of fact in opposition to summary judgment.  The purpose of allowing the subsequent contradictory affidavits to be stricken is not implicated in the present case.  The trial court did not err in refusing to strike the Russell affidavit.

The plaintiffs likewise moved to strike the two purported police interview transcripts that the national fraternity had designated as evidence in support of its motion for summary judgment.  As to this issue, we summarily affirm the Court of Appeals.  "Unsworn statements

and unverified exhibits do not qualify as proper Rule 56 evidence." Indiana Univ. Med. Ctr., Riley Hosp. for Children v. Logan, 728 N.E.2d 855, 858 (Ind. 2000). These police interviews meet neither the Trial Rule 56(E) requirements for affidavits, nor the Trial Rule 56(C) requirements for admissibility of other designated evidence. Thus the Russell affidavit, but not the purported interview transcripts, will be considered in evaluating the national fraternity's motion for summary judgment.

## 2. Summary Judgment

Apart from their challenge to the denial of their motion to strike, the plaintiffs challenge the grant of summary judgment by asserting that genuine issues of material fact exist regarding two issues: first, whether the national fraternity assumed a duty to protect freshman pledges from hazing and the dangers of excessive alcohol consumption; and second, whether the local fraternity was the agent of the national fraternity thereby subjecting it to vicarious liability for the actions of the officers and representatives of the local chapter with respect to claims of negligence per se for hazing and furnishing alcohol to a minor. *See* Appellants' Br. at 15–16, 23.

When appellate courts review the grant or denial of summary judgment, the reviewing court stands in the shoes of the trial court and applies the same methodology. Manley v. Sherer, 992 N.E.2d 670, 673 (Ind. 2013). The moving party has the burden of making a prima facie showing from the designated evidentiary matter that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Gill v. Evansville Sheet Metal Works, Inc., 970 N.E.2d 633, 637 (Ind. 2012); T.R. 56(C). If the moving party satisfies this burden, then the non-moving party must show from the designated evidentiary matter the existence of a genuine issue of fact precluding summary judgment. Manley, 992 N.E.2d at 673. In ruling on summary judgment, a court considers only the designated evidentiary matters, and all evidence and inferences are reviewed in the light most favorable to the non-moving party. Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001).

*a. Liability for Breach of Assumed Duty*

6

The plaintiffs assert that genuine issues of fact preclude summary judgment as to their claim that the national fraternity breached an assumed duty to protect freshman pledges at the local fraternity from hazing and the dangers of excessive alcohol consumption. When addressing this issue in the analogous case of Yost, we explained:

> A duty of care may arise where one party assumes such a duty, either gratuitously or voluntarily. The assumption of such a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person. The assumption of such a duty requires affirmative, deliberate conduct such that it is apparent that the actor specifically [undertook] to perform the task that he is charged with having performed negligently, for without actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully.

3 N.E.3d at 517 (internal quotations, citations, and ellipses omitted). After referring to Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 42 (2012),[2] we concluded: "Thus, to impose liability resulting from breach of assumed duty, it is essential to identify and focus on the specific services undertaken. Liability attaches only for the failure to exercise reasonable care in conducting the 'undertaking.'" *Id*.

The plaintiffs argue that the designated evidentiary materials show that the national fraternity "undertook actual oversight and control over the conduct of members at the local fraternity." Appellants' Supp. Br. in Response to Trans. Pet. at 1–2. The plaintiffs argue that the evidence showing the national fraternity's undertaking "specific action to promulgate rules against hazing, and [to] discover, investigate and prevent future 'pledge family' hazing at [the local fraternity]" supports its claim that the national fraternity assumed a duty to protect the local fraternity's freshman pledges, including the plaintiffs' deceased son. *Id.* at 3.

---

[2] The Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 42 (2012) states:

> An actor who undertakes to render services to another and who knows or should know that the services will reduce the risk of physical harm to the other has a duty of reasonable care to the other in conducting the undertaking if:
>
> > (a) the failure to exercise such care increases the risk of harm beyond that which existed without the undertaking, or
> >
> > (b) the person to whom the services are rendered or another relies on the actor's exercising reasonable care in the undertaking.

7

The national fraternity does not dispute the plaintiffs' factual assertions regarding the national fraternity's involvement with the local chapter, but argues that the national fraternity "lacked any direct oversight and control of the individual fraternity members," and thus "did not assume any duty related to their actions." Appellee's Supp. Br. in Support of Trans. Pet. at 4.

This issue has previously been addressed in various Indiana cases. In Delta Tau Delta v. Johnson, 712 N.E.2d 968 (Ind.1999), *discussed in* Paragon Family Rest. v. Bartolini, 799 N.E.2d 1048, 1053 (Ind. 2003), this Court expressly found no assumption of duty by a national fraternity to protect a guest of the local fraternity from sexual assault. We noted that a series of posters against date rape and alcohol abuse provided by the national fraternity to be hung by the local fraternity in public places "did not profess to have security available . . . nor did they state that one could call [the national fraternity] for help with problems such as date rape or alcohol abuse." *Id.* at 975. Similarly, in Foster v. Purdue Univ. Chapter, 567 N.E.2d 865 (Ind. Ct. App. 1991), *trans. denied*, summary judgment was affirmed for a national fraternity. The Court of Appeals found no assumption of a duty to control an alcohol problem within the local fraternity where a new fraternity member was seriously injured in an alcohol-related incident. The national fraternity there had published an advisory pamphlet, conducted inspections, and compiled reports, which actions were found insufficient to establish the assumption of a duty to control alcohol consumption by the local fraternity members. *Id.* at 872. And most recently, in Yost, this Court found no assumption of duty, notwithstanding evidence of a national fraternity's strong disapproval of hazing in its charters, bylaws, and promotional materials; its provision of an online course on fraternity life that contains instruction on the dangers of hazing; its powers to issue and suspend charters and to discipline or expel individual members; and its right to approve the local chapter's selection of an advisor to act as liaison with the national chapter. 3 N.E.3d at 520–21.

The principal facts in the present case are not in dispute. The plaintiffs' amended complaint asserts that the local fraternity "was an Indiana self-governing, unincorporated association of undergraduate students." Appellants' App'x at 142. The national fraternity's constitution, by-

8

laws, and Membership Responsibility Guidelines[3] ("MRGs") show its disapproval of hazing and irresponsible and underage drinking. In addition to these materials, the national fraternity also provided an online alcohol education program for all new local chapter members, to help them understand the "individual health problems, learning problems . . . relationship problems . . . and legal problems" associated with alcohol consumption.[4] *Id.* at 234. The national fraternity required all pledges to complete the program within the first semester of their pledgeship. The national fraternity recommended that local chapters have a house risk manager—a trained officer of the house who can help respond to emergency situations—who is elected by the local fraternity without the approval of the national fraternity. *Id.* at 248, 272. Like all elected officials in a local fraternity, the national fraternity provided educational materials to the house risk manager to assist him in his duties for the local chapter. *Id.* Also, similar to the facts in Yost, the national fraternity's authority for enforcing its guidelines and policies on hazing and alcohol consumption allowed it to suspend charters, discipline or expel individual members, or even require "[a]dditional educational programming," with decisions to sanction charters or individuals subject to appeal. *Id.* at 229–32. Each local chapter likewise had a chapter advisor[5] appointed by the national fraternity's Division President[6] and subject to the approval of the Arch Chapter, which is the "executive body of the [national fraternity]" and is composed of eleven individual members. *Id.* at 174. The advisor's duties include being "deputy of the Arch Chapter" and a "custodian of the [local fraternity's] charter, secret books, files, official documents, and *Ritual*."[7]

---

[3] Membership Responsibility Guidelines ("MRGs") provide the general expectations the national fraternity has for local chapter members. They prohibit hazing and abusive behavior, explain expectations for the management and local operation of chapters, provide certain rules regarding alcohol and drug use, and state that enforcement of these rules and policies is "the responsibility of every undergraduate chapter member and alumnus." Appellants' App'x at 227–29.

[4] The MRGs, in reference to the alcohol education program state: "With the education of youth our primary objective, the Arch Chapter has adopted GreekLifeEdu as the [national fraternity's] alcohol education program." *Id.* at 234

[5] The chapter advisor is a volunteer (unpaid) alumni. This position is not to be confused with the chapter consultant. A chapter consultant is a "full-time exempt employee[]" of the national fraternity and typically will visit a local fraternity once per semester to "improve the operations of the chapter" by "meet[ing] with the [local] chapter officers . . . [and] alumni volunteers." *Id.* at 264. A chapter consultant is "analogous to a corporate consultant" and he "provide[s] feedback for operations . . . goal setting, [and] next steps" for the local chapter. *Id.*

[6] The national fraternity is divided into geographical divisions for more effective governance, and has a Division President for each of the five geographical divisions. *Id.* at 166–67.

[7] *Ritual* is a term defined by the national fraternity's constitution and bylaws. It is a uniform ceremony prescribed by the Karnea—the entity containing the national fraternity's legislative power. *Id.* at

*Id.* at 184. He is tasked with complying with all requests and orders of the Division President. *Id.* Finally, local chapters are responsible for electing a treasurer to maintain the local chapter's financial records and bookkeeping. *Id.* at 205. Once per month, a local chapter must certify to the national fraternity that the record keeping is correct and accurate, especially in regard to accounts receivable. *Id.* at 183, 245. And, generally once per semester, a chapter consultant is to check the account information and record keeping with the treasurer to promote accuracy and ensure the books are up to date. *Id.* at 243–44, 264. The national fraternity reserves the right to discipline local chapters and individuals for violations of its policies, including the suspension of an individual's membership and the withdrawal of a local chapter's charter. *Id.* at 229–30. In the present case, the chapter advisor, Doug Coy, was at the local fraternity the day before the incident and the morning of the incident helping the local fraternity to prepare for the house's homecoming dedication. *Id.* at 308. The MRGs and Coy's deposition explain that it is the duty of the chapter advisor to "see that the Guidelines are upheld, and equally importantly, that the spirit of the Guidelines is met." *Id.* at 229. Furthermore, in Coy's deposition testimony, he explains a prior scenario at the local fraternity where he reported that rumors of in-house boxing matches were circulating, which would have been a violation of certain MRGs. Coy's reporting of that rumor effectively squelched the situation, as the chapter consultant came to talk with the local fraternity after Coy's report. *Id.* at 310–11. This deposition evidence tends to corroborate the constitution, bylaws, and MRGs—that it was part of Coy's duties to report anything he became aware of that would amount to hazing or underage drinking. And, as Coy himself admits, he "felt like [he] had a duty to take action" when acting as chapter advisor if he observed anything that could be considered hazing or underage drinking. *Id.* at 310. The chapter advisor in this case, Coy, was responsible for attending at least one chapter meeting per month, for ensuring the alcohol education program was timely completed by the local fraternity members, and, most significantly to this particular case, for reporting any violation of MRGs of which he became aware to the national fraternity. *Id.* at 229, 310.

The nature of the national fraternity's involvement with the local fraternity and its efforts to combat the problems of hazing and alcohol abuse in this case may certainly be seen as more robust and extensive than those described in Foster, Johnson, and Yost. But they are not differ-

---

172.

ent in nature and character. There is no designated evidentiary material that shows that the national fraternity had a right to exercise direct day-to-day oversight and control of the behavior of the activities of the local fraternity and its members. Like Yost, the specific duty undertaken in regards to the policies on hazing and underage and irresponsible drinking was an educational one without any power of preventative control.

Favorably construing the facts to the plaintiffs as the non-moving party, as we must, we find that the national fraternity's involvement with the local fraternity, while more extensive than in Yost, fails to establish any significant difference in the nature of the specific services undertaken—providing information to the local fraternity to discourage hazing and alcohol abuse and disciplining chapters and members for violations. There is no evidence that the national fraternity assumed any duty of preventative, direct supervision and control of the behaviors of its local chapter members. While it certainly was the commendable objective of the national fraternity to actively engage in programs to discourage hazing and alcohol abuse, we find that the specific services assumed by the national fraternity did not rise to the level of assuring protection of the freshman pledges from hazing and the dangers of excessive alcohol consumption—the assumed duty alleged by the plaintiffs. The national fraternity did have a duty of reasonable care in the performance of its assumed duty of providing information and guidance. But the national fraternity's conduct did not demonstrate any assumption of a duty directly to supervise and control the actions of the local fraternity and its members. The national fraternity did not have a duty to insure the safety of the freshman pledges at the local fraternity.

b. *Vicarious Liability for Negligence of the Local Fraternity and its Officers*

The plaintiffs also challenge the grant of summary judgment as to the issue of whether the local fraternity was the agent of the national fraternity, so as to impose vicarious liability on the latter for the actions of the officers and representatives of the local chapter with respect to claims of negligence per se for hazing and furnishing alcohol to a minor. The national fraternity contends that it is entitled to summary judgment because there was no agency relationship between the national and local fraternities. It asserts that the designated evidence shows that it did not have the power to control the conduct of the local fraternity nor that of its officers toward

11

freshman pledges, nor did the local fraternity or its officers consent to any such control.

As is discussed in more detail in Yost, for the liability of an agent to be imputed to a principal, an agency relationship must exist, and an essential element of that relationship is that the agent must "act on the principal's behalf." Restatement (Third) of Agency § 1.01 (2006). Also, the agent must consent to act on the principal's behalf, as well as be subject to the principal's control. *Id.* cmt. c; *see also* Foster, 567 N.E.2d at 872 ("Agency is a relationship which results from manifestation of consent by one party to another. The elements of agency are consent and control. An agent must acquiesce to the arrangement, and be subject to the principal's control."). Citing Trinity Lutheran Church, Inc. of Evansville, Ind. v. Miller, 451 N.E.2d 1099, 1101–02 (Ind. Ct. App. 1983), *trans. denied*, the plaintiffs point out that the "right to control" "does not require the master actually exercising control over the actions of an agent, but merely having the right to do so." Appellants' Br. at 32. With respect to the plaintiffs' assertion of vicarious liability for conduct constituting hazing or providing alcoholic beverages to minors, the plaintiffs' claims are based on the conduct of the local fraternity or its individual members. If an agency relationship is determined to exist, then such conduct is imputed to the the national fraternity, which may result in vicarious liability. "Whether an agency relationship exists is generally a question of fact, but if the evidence is undisputed, summary judgment may be appropriate." Demming v. Underwood, 943 N.E.2d 878, 884 (Ind. Ct. App. 2011), *trans. denied*.

The plaintiffs contend that the designated facts show that the national fraternity, through its broad enforcement powers, had the right to control local fraternity pledge activities and alcohol use. It is significant, however, that these alleged enforcement powers are remedial only. The national fraternity has no right to direct or control a local fraternity member's personal actions and behavioral choices. The national fraternity's role in imposing post-conduct sanctions does not establish the right to control for purposes of creating an agency relationship.

The relationship between the national fraternity and the local fraternity involves the national fraternity offering informational resources, organizational guidance, common traditions, and its brand to the local fraternity. Additionally, the national fraternity furthers joint aspirational goals by encouraging individual members' good behavior and by investigating complaints and

12

reports that affect the health, reputation, and stability of local chapters.  The national fraternity has the right to discipline, suspend, or revoke its affiliation with the local fraternity or its members.  The local fraternity's everyday management and supervision of activities and conduct of its resident members, however, is not undertaken at the direction and control of the national fraternity.  The local fraternity is responsible for electing its own officers without the consent or oversight of the national fraternity.  Local officers are expected to abide by the aspirational goals promulgated by the national fraternity, but are never given the authority to act on behalf of the national fraternity.

Considering the undisputed evidentiary material and resolving any disputed factual issues in favor of the plaintiffs as the non-moving party, we conclude as a matter of law that an agency relationship does not exist between the national fraternity and the local fraternity or its members.  Although subject to remedial sanctions, in their choice of conduct and behavior, the local fraternity and its members were not acting on behalf of the national fraternity and were not subject to its control.  This is not a matter upon which there is any dispositive issue of material fact but rather an issue of law.  The national fraternity is not subject to vicarious liability for the actions of the local fraternity, its officers, or its members.

### Conclusion

The trial court correctly granted the national fraternity's motion for summary judgment. We affirm the judgment of the trial court.

Rucker, David, Massa, Rush, JJ., concur.

13