# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**DOUGLAS E. SAKAGUCHI**
**JEROME W. MCKEEVER**
Pfeifer Morgan & Stesiak
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**ERIC W. VON DECK**
**MARK D. KUNDMUELLER**
Tuesley Hall Konopa, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| FREDERICK BAZELEY, JR., ) | |
| As Personal Representative of the ) | |
| ESTATE OF FREDERICK T. BAZELEY, III, ) | |
| ) | |
| Appellant/Plaintiff, ) | |
| ) | |
| vs. ) | No.  20A03-1401-CT-36 |
| ) | |
| ROBERT PRICE and ) | |
| SAMPSON FIBERGLASS, INC., ) | |
| ) | |
| ) | |
| Appellees/Defendant. ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Evan S. Roberts, Judge
Cause No. 20D01-1205-CT-86

**July 30, 2014**

**OPINION – FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

In fall 2011 a deadly accident occurred when Frederick T. Bazeley III's motorcycle collided with a thirty-seven-foot trailer being hauled by Robert Price's flatbed truck. Frederick Bazeley Jr., as Personal Representative of the Estate of Frederick T. Bazeley III ("Bazeley's Estate"), now appeals the trial court's grant of summary judgment in favor of Price and Sampson Fiberglass, Inc. in Bazeley Estate's action for wrongful death as a result of the collision. Bazeley's Estate contends that the trial court erred in granting summary judgment in favor of Price and Sampson Fiberglass because there is a genuine issue of material fact concerning the cause of the collision. Finding a genuine issue of material fact regarding causation, we reverse and remand.

**Facts and Procedural History**

Around 1:45 p.m. on September 20, 2011, Price, who was employed as a driver by Sampson Fiberglass, was returning to the Sampson Fiberglass plant at 2424 North Home Street in Mishawaka, Indiana. Appellant's App. p. 35. Price was driving a Ford F-350 flatbed truck, hauling a thirty-seven-foot trailer. *Id*. Price was traveling eastbound on McKinley Avenue and was waiting to make a left turn at the intersection of McKinley Avenue and Home Street. *Id*. At the same time, Bazeley was driving his Harley Davidson motorcycle westbound on McKinley toward the same intersection. The speed limit was forty-five miles per hour. *Id*. at 86.

Robert Davis was also driving westbound on McKinley toward its intersection with Home. *Id*. at 88. Bazeley pulled his motorcycle next to Davis's passenger-side door at a red light at the intersection of McKinley and Capital, which is a few blocks east of the

2

McKinley and Home intersection. *Id*. McKinley has two westbound lanes at this point, but just west of this intersection the lanes begin to merge into a single westbound lane. *Id*. When the light turned green, Davis and Bazeley accelerated forward. *Id*. A truck and car were in front of Bazeley's motorcycle. *Id*. As Bazeley's lane began to merge into Davis's lane, the car in front of Bazeley pulled in front of Davis's car. *Id*. The lanes had already merged when Bazeley passed Davis, so Bazeley drove on the white line of the shoulder of the road. *Id*. Davis was traveling fifty miles per hour when Bazeley passed him on the right. *Id*. at 89. Seconds after Bazeley passed Davis, Davis heard a squealing noise and crash. *Id*.

Price had been waiting to make a left turn at the intersection of McKinley and Home. *Id*. at 35. Here, Price activated his left turn signal, came to a complete stop, and waited for a break in westbound traffic. *Id*. When Price began his turn, he could see traffic approaching in the distance on westbound McKinley, but he believed that traffic was far enough away that it did not present a hazard. *Id*. at 36. Because a school bus was stopped at the intersection facing south on Home, Price made a wide-left turn. *Id*. at 42, 91. As Price made the left turn, Bazeley, approaching the intersection from westbound McKinley, attempted to avoid crashing into the trailer by applying the brake; this resulted in a tire skid mark on the road. *Id*. at 108. After skidding 198 feet, Bazeley's motorcycle overturned onto its right side and slid another fourteen feet into the path of the truck. *Id*. at 36, 108. That is, before Price completed his turn, Bazeley's motorcycle collided with the rear bumper of the pick-up truck and the front-end of the trailer Price was pulling. *Id*. at 36, 108. Bazeley was dragged by the trailer for approximately fourteen feet. *Id*. at 108.

3

Bazeley's body remained in contact with his motorcycle as it was dragged, and he came to rest on top of his motorcycle. *Id.* Price stated that before the collision, he did not see or hear Bazeley's motorcycle approaching the intersection. *Id.* at 36. However, although Davis could no longer see Bazeley's motorcycle, he was able to hear the screeching of Bazeley's tires as the motorcycle skidded into the intersection. *Id.* at 90. Bazeley died as a result of his injuries. *Id.* at 15.

Price and Sampson Fiberglass, as well as Bazeley's Estate, retained mechanical engineers to reconstruct and determine the cause of the accident. Price and Sampson Fiberglass retained Daniel R. Aerni, P.E., of MV Engineering Company, and Bazeley's Estate retained R. Matthew Brach, Ph.D., P.E., of Brach Engineering, LLC. *Id.* at 41, 106. The experts agreed that Bazeley was a minimum of 342 to 356 feet away from the location of impact when Price initiated his turn. *Id.* at 39, 109. The experts further agreed that Bazeley applied the brakes of his motorcycle before the collision, which left a minimum 198-foot skid mark on the road. *Id.* at 38, 108.

The speed limit on McKinley Avenue was forty-five miles per hour, and both experts agreed that Bazeley was traveling in excess of the speed limit. *Id.* at 86. Aerni calculated that Bazeley's pre-skid speed was at least sixty-nine miles per hour, his speed was the sole cause of the accident, and if Bazeley had been traveling forty-five miles per hour, there would have been no collision. *Id.* at 39. Aerni also found that Price would have needed an additional 1.19 seconds in order to complete the turn to the point where the westbound lane would have been clear. *Id.* at 51. In contrast, Brach calculated that Bazeley's pre-skid speed was between fifty-nine and sixty-six miles per hour, but it could

4

have been as low as fifty-six miles per hour. *Id*. at 110. Brach also determined that even if Bazeley had been traveling the speed limit of forty-five miles per hour, the back of the trailer still would have occupied one-half to one-quarter of the lane in which Bazeley was traveling, and that light braking would have delayed Bazeley's motorcycle enough for the trailer to clear the lane. *Id*. at 109.

In May 2012 Bazeley's Estate filed a complaint for wrongful death against Price and Sampson Fiberglass. The complaint alleged that the accident occurred as a result of the "carelessness and negligence" of Price while operating his "trailer-tractor" in the course and scope of his employment with Sampson Fiberglass. *Id*. at 15. Price and Sampson Fiberglass filed a motion for summary judgment asserting that "the uncontradicted evidence establishes that Price did not breach a duty to Bazeley and that Bazeley's own negligence was the sole cause of his injuries and death." *Id*. at 23. The motion further asserted that because Price was not negligent, Sampson Fiberglass could not be held liable under the doctrine of respondeat superior. *Id*. at 31.

Following a hearing in January 2014, the trial court granted Price and Sampson Fiberglass's motion for summary judgment on the issues of causation and apportionment of fault. *Id*. at 8-14. The court found in part:

> The undisputed facts show that [Price] stopped at the intersection, signaled he was turning, and after observing oncoming traffic at a distance began his turn. [Price] did not violate the [left-turn] statute. No vehicle was either in the intersection or so close to constitute an immediate hazard. The evidence suggests that the motorcycle was not at the front of the line when [Price] initiated his turn. Even if the motorcycle was at the front of the line of traffic at the time [Price] began his turn, the fact that the motorcycle was able to skid 198 feet and slide another 14 feet, shows that the motorcycle was in fact a distance from the intersection.

5

[Price] did not see the motorcycle approaching, but he did see traffic at a distance. Further, the motorcycle passed vehicles on the right side of the road. The motorcycle was traveling at a high rate of speed. No evidence has been designated that [Price] was in any way negligent. [Price] need not assume in exercising his duty of reasonable care that other drivers will be breaking the law. [Bazeley's] argument that a collision occurred is simply not sufficient.

Further, the only reasonable conclusion for a trier of fact is that [Bazeley's] speed was the cause of the accident. Even in the light most favorable to [Bazeley], [his] expert opined that the motorcycle was 212 feet from the point of impact (198 + 14) when he began to brake, that he was traveling 14 miles over the posted speed limit, and that had he been traveling at 45 miles per hour, he would have been to the intersection after [Price] had cleared the road with only slight braking. [Bazeley] had a duty to drive appropriate for conditions and within the posted speed limit.

Although it is true that a violation of the speed limit "would not *ipso facto* render [Bazeley] 100% or even 50% at fault," here [Price] has presented expert evidence that [Bazeley's] speed was the cause of this accident [and Bazeley] has not presented any fact that rebuts this evidence. [Bazeley's] expert did not testify as to causation, but did state had [Bazeley] been travelling 45 miles per hour, the posted speed limit, he would have had to break only slightly to give [Price] enough time to exit the roadway. The trier of fact could not but conclude that [Bazeley] was at least 50% at fault.

*Id*. at 12-13.

Bazeley's Estate appeals the trial court's entry of summary judgment in favor of Price and Sampson Fiberglass.

**Discussion and Decision**

When appellate courts review the grant or denial of summary judgment, the reviewing court stands in the shoes of the trial court and applies the same methodology. *Smith v. Delta Tau Delta, Inc*., 9 N.E.3d 154, 160 (Ind. 2014). The moving party has the burden of making a prima facie showing from the designated evidentiary matter that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id*. If the moving party satisfies this burden, then the non-moving party must show from

6

the designated evidentiary matter the existence of a genuine issue of fact precluding summary judgment. *Id.* In ruling on summary judgment, a court considers only the designated evidentiary matters, and all evidence and inferences are reviewed in the light most favorable to the non-moving party. *Id.* Here, the trial court entered an order containing facts and conclusions thereon. *Miller v. Yedlowski*, 916 N.E.2d 246, 249 (Ind. Ct. App. 2009), *trans. denied.* This, however, does not change the nature of our review on summary judgment. *Id.* In the summary-judgment context, the entry of specific facts and conclusions aids our review by providing us with a statement of reasons for the trial court's decision, but it has no other effect. *Id.*

Bazeley's wrongful-death complaint alleges negligence on the part of Price. "In negligence cases, summary judgment is rarely appropriate." *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Id.* Negligence contains three elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty by the defendant, and (3) an injury to the plaintiff as a proximate result of the breach. *Key v. Hamilton*, 963 N.E.2d 573, 579 (Ind. Ct. App. 2012) (citing *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007)), *trans. denied.*

The court stated that Bazeley "had a duty to drive appropriate for the conditions," which would include driving the speed limit, but Price did as well. Appellant's App. p. 13. Indiana Code section 9-21-8-30 provides the specific standard of care in this case:

> A person who drives a vehicle within an intersection intending to turn to the
> left shall yield the right-of-way to a vehicle approaching from the opposite

7

direction that is within the intersection or so close to the intersection as to constitute an immediate hazard. After yielding and giving a signal as required by this chapter, the person who drives the vehicle may make the left turn, and the persons who drive other vehicles approaching the intersection from the opposite direction shall yield the right-of-way to the vehicle making the left turn.

Therefore while Bazeley had a duty not to speed, Price also had a duty not to make a left turn in front of approaching traffic without first being certain that the traffic was not so close as to present an immediate hazard. And so, the point of contention in this case is who caused the collision between Bazeley and Price.[1]

The trial court ruled that Bazeley failed to produce evidence from which a reasonable jury could find in Bazeley's favor on the element of causation, stating "the only reasonable conclusion for a trier of fact is that [Bazeley's] speed was the cause of the accident. Appellant's App. p. 13. "Causation is an essential element of a negligence claim." *Correll v. Ind. Dep't of Transp.*, 783 N.E.2d 706, 707 (Ind. Ct. App. 2002), *trans. denied*. The injurious act must be both the proximate cause and the cause in fact of the injury. *Id.*; *see also City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1243 (Ind. 2003), ("Under standard negligence doctrine, in order for a defendant to be liable for a plaintiff's injury, the defendant's act or omission must be deemed to be a proximate cause of that injury."). "Generally, causation, and proximate cause in particular, is a question of fact for the jury's determination." *Correll*, 783 N.E.2d at 707; *see also Smith v. Beaty*, 639 N.E.2d 1029, 1035 (Ind. Ct. App. 1994) ("The question of causation is

---

[1] Because the elements of breach and causation are so closely intertwined in this case, we address only the causation issue. However, the decision is applicable to both.

8

. . . usually inappropriate for summary disposition because it often requires a weighing of disputed facts.").

In support of their motion for summary judgment, Price and Sampson Fiberglass used their expert's calculation that Bazeley was traveling at least sixty-nine miles per hour and Price's testimony that he had not seen Bazeley when he looked at oncoming traffic before turning. Price and Sampson Fiberglass argue that when Price began his left turn Bazeley was on the right side of the road passing vehicles and therefore Price could not have seen Bazeley, claiming "the uncontradicted evidence makes it clear that Bazeley had not yet passed the other westbound vehicles when Price began his turn." Appellees' Br. p. 12. But this is not an established fact, and the designated evidence does not establish where Bazeley was when Price began his turn, or why Price did not see Bazeley.

However, Price was aware that the speed limit on the road was forty-five miles per hour and that the oncoming traffic was approaching at a high rate of speed. Davis stated that he was traveling at fifty miles per hour and other cars had merged in front of him when the road narrowed to one lane. Price also knew he was pulling a thirty-seven-foot trailer and that he had to make an exceptionally wide turn due to the placement of a school bus at the intersection.

And although both parties' experts agree that Bazeley was driving above the speed limit, they disagree about how fast he was driving. Price and Sampson Fiberglass contend that the difference as to Bazeley's actual speed "is not a material question of fact"; however, that is precisely what it is. *Id*. at 17. If Price and Sampson Fiberglass's argument is that Bazeley's speed was the sole cause of the accident, then his speed is critical in

9

determining causation. Price's expert calculated Bazeley's speed at sixty-nine miles per hour, whereas the expert for Bazeley's Estate calculated a range of fifty-nine to sixty-six miles per hour, but possibly as low as fifty-six miles per hour. Therefore Bazeley could have been driving anywhere from eleven to twenty-four miles per hour over the speed limit. In claiming that Bazeley's speed alone was the proximate cause of the accident, we find this disparity to be material.

Again, questions concerning negligence, causation, and reasonable care are more appropriately determined by the trier of fact. *Wilkerson v. Harvey*, 814 N.E.2d 686, 690 (Ind. Ct. App. 2004), *trans. denied*. The designated evidence creates questions of fact as to where Bazeley was when Price began his turn, why Price did not see Bazeley, and the speed at which Bazeley was traveling as he approached the intersection. We consequently find that Price and Sampson Fiberglass did not meet their burden of establishing that no genuine issues of material fact exist. For these reasons, the trial court erred in granting Price and Sampson Fiberglass's motion for summary judgment in finding Bazeley to be the sole cause of the accident; this is a determination for a jury.[2] We therefore reverse the judgment and remand to the trial court.

Reversed and remanded.

---

[2] Bazeley's Estate also argues that the trial court erred in granting summary judgment in favor of Price and Sampson Fiberglass on the issue of apportionment of fault. *See* Appellant's App. p. 13 ("The trier of fact could not but conclude that Plaintiff was at least 50% at fault."). The apportionment of fault is uniquely a question of fact to be decided by the fact-finder. *Dennerline v. Atterholt*, 866 N.E.2d 582, 598 (Ind. Ct. App. 2008), *reh'g denied*. At some point the apportionment of fault may become a question of law for the court. *Id*. But that point is reached only when there is no dispute in the evidence and the fact-finder is able to come to only one logical conclusion. *Id*. Given that the evidence shows that Price pulled his thirty-seven-foot trailer in front of Bazeley's motorcycle at 1:45 p.m., there is no evidence that his view was obstructed, and the estate's expert report shows that had Bazeley been driving the speed limit, Price's trailer still would have occupied up to one-half of the westbound lane, we find that the trial court also erred in entering summary judgment in favor of Price and Sampson Fiberglass on this issue.

NAJAM, J., and BROWN, J. concur.