# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 06 2020, 8:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stephen Gerald Gray
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

$17,084.00 in United States Currency and Edward Weaver,

*Appellants-Defendants,*

*v.*

State of Indiana,

*Appellee-Plaintiff.*

February 6, 2020

Court of Appeals Case No. 19A-MI-1710

Appeal from the Marion Superior Court

The Hon. Gary Miller, Judge

Trial Court Cause No. 49D03-1809-MI-38346

**Bradford, Chief Judge.**

# Case Summary

In September of 2018, Edward Weaver was driving a truck in Indianapolis and was stopped after being involved in a mobile shoot-out with another vehicle. Approximately $17,000.00 was found on Weaver's person and in the truck, along with three handguns and various controlled substances. A search of the area where the shoot-out began yielded a one-half kilogram package of white powder that appeared to be cocaine, but was later determined not to be. The State filed a forfeiture action to seize the approximately $17,000.00, and Weaver moved for summary judgment. The trial court denied Weaver's motion for summary judgment and, after a bench trial, granted the State's forfeiture request. Weaver contends that the trial court erred in denying his summary-judgment motion and that the State produced insufficient evidence to sustain a forfeiture of the money. Because we disagree with both contentions, we affirm.

# Facts and Procedural History

Early on September 19, 2018, Indianapolis Metropolitan Police Officer Michael Finch was parked near 38th Street and Sherman Drive in Indianapolis when he heard two or three gunshots. As Officer Finch was driving out of the parking lot to investigate, he heard two vehicles squealing their tires and observed two vehicles, at least one a truck, eastbound on 38th Street toward Sherman Drive, exchanging gunfire. Officer Finch engaged his lights and siren while following the vehicles. When one of the vehicles, a truck, abruptly turned south on Sherman Drive, Officer Finch pursued, and the truck stopped soon thereafter.

[3]     The doors of the truck opened, and Weaver emerged.  The agitated Weaver did not comply with Officer Finch's commands, had suffered a superficial head wound, and was eventually handcuffed.  Officer Finch observed a white, powdery substance on the backseat of the truck, and Weaver had approximately $14,000.00 in cash on his person.  Officer Finch saw two or three handguns in the truck and found no records indicating that any of the three occupants had a license to carry those weapons.

[4]     The truck was searched, and officers found approximately sixty buprenorphine pills, twenty-seven Suboxone strips, and a number of Xanax pills, none of which were in original packaging.  Officers also recovered approximately $3000.00 from the truck.  Although the number of pills and Suboxone strips found could be consistent with either drug dealing or personal use, it was not normal to find a drug user with three types of narcotics.

[5]     Shortly after the stop, Officer Linda Roeschlein went to the area on 38th Street where Officer Finch had first heard shots to look for shell casings.  Officer Roeschlein found a taped-up but ripped-open package of a chunky powder the "size of a brick" that appeared to be cocaine.  Tr. Vol. II p. 53.  The package was in the middle of the road and "would have probably been smashed" if it had been there the entire day.  Tr. Vol. II p. 55–56.  As it happened, later testing revealed that the package did not, in fact, contain cocaine.  The package weighed approximately one-half kilogram and would have had a street value of approximately $17,000.00 had it been cocaine.

[6]     On September 24, 2018, the State filed a complaint seeking forfeiture of the $17,084.00 in currency which had been seized. The complaint alleged the "currency had been furnished or was intended to be furnished in exchange for violation of criminal statute, or is traceable as proceeds of violation of criminal statute, in violation of Indiana law, as provided in I.C. 34-24-1-1." Appellant's App. Vol. II p. 11. On February 25, 2019, Weaver moved for summary judgment, alleging that the State had not proven any nexus between the money and qualifying criminal activity. In support, Weaver designated the forfeiture complaint and the charging information, probable-cause affidavit, laboratory report, and State's motion to dismiss cocaine-related charges from criminal cause number 49G21-1809-F2-32387.

[7]     On March 22, 2019, the State responded, arguing that forfeiture of the money was warranted even in the absence of any actual cocaine because the sale of a substance represented to be a controlled substance is also a crime supporting forfeiture. On May 8, 2019, the trial court denied Weaver's summary-judgement motion. On June 26, 2019, a bench trial was held, and, on July 17, 2019, the trial court entered judgment in favor of the State.

# Discussion and Decision

## I. Summary-Judgment Motion

[8]     When reviewing the denial of a summary-judgment motion, we apply the same standard as that of the trial court. *Smith v. Delta Tau Delta, Inc.*, 9 N.E.3d 154, 160 (Ind. 2014). Summary judgment is precluded by any genuine issue of material fact, "that is, any issue requiring the trier of fact to resolve the parties'

differing accounts of the truth." *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party has the burden of making a *prima facie* showing from the designated evidentiary matter that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Smith*, 9 N.E.3d at 160. If the moving party satisfies this burden, then the non-moving party must show from the designated evidentiary matter the existence of a genuine issue of fact precluding summary judgment. *Id*. The court considers only the designated evidentiary matters, and all evidence and inferences are reviewed in the light most favorable to the non-moving party. *Id*.; Ind. Trial Rule 56(C).

[9] Weaver was not entitled to summary judgment because his designated evidence did not establish the absence of a genuine issue of material fact. The "moving party bears the burden of specifically designating materials that make a prima facie showing that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Hinchman*, 20 N.E.3d 863, 869 (Ind. Ct. App. 2014), *trans. denied*. *Prima facie* may be defined as "'[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted; based on what seems to be true on first examination, even though it ma[y] later be proved to be untrue.'" *City of Gary v. Auto-Owners Ins. Co.*, 116 N.E.3d 1116, 1123 (Ind. Ct. App. 2018) (citation omitted).

[10] Indiana law permits the State to seek forfeiture of all money "furnished or intended to be furnished by any person in exchange for an act that is in violation of a criminal statute [or] traceable as proceeds of the violation of a criminal statute" for crimes or attempts which are a violation of Indiana Code

chapter 35-48-4. Ind. Code § 34-24-1-1(a)(2). Weaver claims he made a *prima facie* showing that he is entitled to summary judgment because (1) the apparent brick of cocaine was not actually cocaine and (2) Weaver's cocaine-related charges had been dismissed. As the State points out, however, the sale of a look-a-like drug is *also* a crime defined in Indiana code chapter 35-48-4, thereby supporting the forfeiture of money shown to be connected to it. *See* Ind. Code §§ 35-48-4-4.5 (repealed effective July 1, 2019), 35-48-4-4.6 (enacted effective July 1, 2019) ("A person who knowingly or intentionally […] delivers [or] finances the delivery of [….] a substance represented to be a controlled substance commits a Level 6 felony.").

[11] That said, Weaver's designated evidence—which included the probable cause affidavit—easily generates a question of a material fact about whether the money was related to dealing a substance represented to be cocaine. Specifically, one-half kilogram of apparent cocaine was found at the location in the street where a gunfight started between two vehicles, one of which was begin driven by Weaver. When Weaver was stopped, police found multiple handguns; many types of narcotics; and a white, powdery substance in his vehicle, while Weaver was found in possession of an amount of currency which is consistent with the street value of one-half kilogram of cocaine. While the apparent cocaine was ultimately shown to not be genuine, a reasonable inference is that Weaver either sold (or attempted to sell) or bought (or attempted to buy) a white powder meant to be taken as packaged cocaine. Any of these scenarios amounts to a crime supporting forfeiture. Put another way,

even though the package was found to not contain any cocaine, that does not eliminate the possibility of the money being related to an offense such that forfeiture is supportable. Weaver did not meet his initial burden to show he was entitled to summary denial of the forfeiture complaint.[1]

## II. Sufficiency of the Evidence

[12] The standard of review for challenges to the sufficiency of the evidence supporting civil judgments is the same as that in criminal cases. *Lipscomb v. State*, 857 N.E.2d 424, 427 (Ind. Ct. App. 2006) (applying sufficiency standard to a forfeiture). The court will neither reweigh the evidence nor reassess the credibility of witnesses. *Gonzalez v. State*, 74 N.E.3d 1228, 1230 (Ind. Ct. App. 2017). "When there is substantial evidence of probative value to support the trial court's ruling, it will not be disturbed." *Id*. We "will reverse only when we are left with a definite and firm conviction that a mistake has been made." *Id*.

[13] "Civil forfeiture is a device, a legal fiction, authorizing legal action against inanimate objects for participation in alleged criminal activity, regardless of whether the property owner is proven guilty of a crime—or even charged with a crime." *Serrano v. State*, 946 N.E.2d 1140, 1140 (Ind. 2011). To obtain the right to dispose of property, use the property, or recover law enforcement costs, the

---

[1] Because Weaver failed to make a *prima facie* showing that he is entitled to summary judgment on the basis that there was no actual cocaine, we need not address the question of whether the State successfully rebutted such a showing. For the same reason, we also need not address Weaver's argument that the trial court improperly relied upon the probable-cause affidavit from his criminal case, as Weaver contends only that the State improperly used it to rebut his alleged *prima facie* showing.

State must demonstrate by a preponderance of the evidence that the property was subject to seizure pursuant to Indiana's forfeiture statute. Ind. Code § 34-24-1-4(a)1; *Serrano*, 946 N.E.2d at 1142–43.

[14] The Indiana Supreme Court has noted the following:

> In *Kantner v. State*, 655 N.E.2d 345 (Ind. 1995), this Court held that to sustain a forfeiture the State must demonstrate that the property sought in forfeiture was used to commit one of the enumerated offenses under the statute. This nexus, we said, best articulates the statute's requirement of proof by a preponderance that the property is subject to forfeiture. *Id*. at 349. Requiring such proof, Justice Selby wrote, is a "means to guarantee that the government is seizing actual instrumentalities of illegal drug trade…. Depriving persons of their property such as vehicles unrelated to the drug trade will do little to advance our Legislature's intent." *Id*. at 349. Drawing a comparison to the Seventh Circuit's application of federal statutes, we held that our statute "requires more than an incidental or fortuitous connection between the property and the underlying offense." *Id*. at 348–49 (comparing our statute to the federal act discussed in *United States v. 916 Douglas Avenue*, 903 F.2d 490 (7th Cir. 1990)).

*Serrano*, 946 N.E.2d at 1143 (ellipsis in *Serrano*).

[15] Weaver argues that the State failed to produce any evidence connecting the $17,084.00 to any illegal activity that would support forfeiture. We disagree. Officer Finch testified that he observed a white, powdery substance on the backseat of the truck, Weaver had approximately $14,000.00 on his person, and approximately $3000.00 more was recovered from the truck. Officer Finch saw two or three handguns in the truck and found no records indicating that any of its three occupants had a license to carry those weapons. Officers found

approximately sixty buprenorphine pills, twenty-seven Suboxone strips, and a number of Xanax pills, none of which were in original packaging. Finally, the State produced evidence linking Weaver to the truck, which was registered to Takeisha Young, Weaver's girlfriend and the mother of his child. This evidence, as a whole, leads to an inference that Weaver was involved in drug dealing in general.

[16] As for the brick of apparent cocaine in particular, Officer Roeschlein testified that she was sent to the area where the mobile shoot-out began and found a taped-up but ripped-open package of a chunky powder the size of a brick that appeared to be cocaine in the middle of the road. The package weighed approximately one-half kilogram and would have had a street value of approximately $17,000.00 had it been cocaine, a figure very close to the $17,084.00 recovered from Weaver's person and the truck. There is more than enough to infer that Weaver either sold or attempted to sell a substance he represented to be cocaine, or attempted to buy a substance represented to be cocaine, and that the $17,084.00 was transferred (or intended to be transferred) in the drug deal gone bad.[2] Weaver argues that there is no evidence linking him to any of the drugs or guns or that any of the money was obtained illegally. This is nothing more than an invitation to reweigh the evidence, which we will not do. *See Gonzalez*, 74 N.E.3d at 1230. Based on this record, we have little

---

[2] Another reasonable inference is that the buyers becoming aware of the true nature of the package is what led to the gunfight.

trouble concluding that the State produced ample evidence to establish a nexus between the money and the underlying offense of dealing a substance represented to be controlled substance.

[17]   We affirm the judgment of the trial court.


Robb, J., and Altice, J., concur.