FILED

Sep 05 2017, 5:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Thomas A. Brodnik
Patrick M. Cline
Doninger Tuohy & Bailey LLP
Indianapolis, Indiana

Scott Treadway
EST Law, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

T. Joseph Wendt
Edward M. Smid
Barnes & Thornburg LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason Ellis, <br> *Appellant-Defendant/Counterclaimant,* <br><br> v. <br><br> Keystone Construction Corporation, <br> *Appellee-Plaintiff/Counterclaim Defendant.* | September 5, 2017 <br><br> Court of Appeals Case No. 32A01-1607-PL-1477 <br><br> Appeal from the Hendricks Superior Court 4 <br><br> The Honorable Mark A. Smith, Judge <br><br> Trial Court Cause No. 32D04-1207-PL-77 |

**Mathias, Judge.**

[1]   Jason Ellis ("Ellis") challenges the order of the Hendricks Superior Court granting summary judgment in favor of Keystone Construction Corporation ("Keystone"). On appeal, Ellis presents four issues, one of which we find

dispositive, which we restate as whether the trial court erred in determining that the doctrine of judicial estoppel precluded Ellis's claims against Keystone.

We affirm.

## Facts and Procedural History[1]

Keystone is a construction company formed by Ersal Ozdemir ("Ersal") in 2002, with Ersal as the sole shareholder. Ellis was experienced in the commercial construction industry, and in late 2002 and early 2003, Ersal recruited Ellis to come to work for Keystone. Ellis claims that Ersal offered to make him a "partner" in Keystone with a 20% ownership interest. Ellis agreed and began to work for Keystone as the director of construction.

Thereafter, although Ellis's partnership or ownership status was never formalized in writing, Ersal introduced Ellis to others as his "partner," and told others that he had a "partner" in Keystone. Ellis was also referred to on Keystone's website as a partner and in internal corporate records as a "partner" and "director." Ersal also discussed Keystone's obligation to pay dividends to Ellis, and Ellis received some dividends from Keystone in addition to his salary.

After Ellis joined Keystone, Ersal's younger brother, Huseyin Ozdemir ("Huseyin"), also joined Keystone as a third member or shareholder. Huseyin's

---

[1] Keystone disputes many of the facts designated by Ellis in opposition to Keystone's motion for summary judgement. We set forth the facts in accordance with our standard of review of the trial court's grant of summary judgment, i.e., we construe all factual inferences in favor of Ellis as the non-moving party. *See Hill v. Gephart*, 54 N.E.3d 402, 406 (Ind. Ct. App. 2016), *aff'd on reh'g* at 62 N.E.3d 408, *trans. denied*.

background was in finance and accounting, and he became the financial officer of the company. Huseyin told others working for Keystone that he, Ersal, and Ellis were "partners" or "owners" of Keystone. Appellant's App. Vol. 4, p. 25.

[6] As the company grew, it became involved in several large commercial construction projects. Ellis and Huseyin also pressured Ersal to reduce their ownership status to writing in a formal shareholder or partnership agreement. In 2006, Ersal sent Ellis and Huseyin an email stating that he had met with attorneys who were preparing a partnership agreement, a buy/sell agreement, and stock certificates. Apparently, however, these agreements were never signed by the parties.

[7] In 2010, Huseyin sent Ersal an email demanding that Ersal purchase his shares of Keystone for $2,500,000, which Huseyin believed represented his share of the value of Keystone at the time, which he determined was in excess of $7,500,000. Huseyin also complained of Ersal's failure to formalize the ownership of the company. Ersal responded by claiming that he had always owned 100% of the company. He also stated that if Huseyin believed the company was worth that much, he should buy it from Ersal for that price.

[8] At the same time as the dispute over ownership of Keystone was developing, Ellis and his then wife, Brooke Ellis ("Brooke") were in the process of dissolving their marriage. Brooke filed for dissolution in February 2010. Eventually, Ellis and Brooke entered into a settlement agreement resolving all issues in the dissolution, which the dissolution court accepted and incorporated

into the dissolution decree. This settlement agreement purported to disclose "all the property and interest, both real and personal, now held by [Ellis and Brooke]." Appellee's App., Vol. 3, p. 164. The agreement also provided that Ellis and Brooke "have amicably and equitably divided all personal property acquired during the course of the marriage," and that both parties "represent and warrant to each other that there has been a full disclosure of assets and that the property referred to in this Agreement represents all the property of any sort whatsoever which either of them have an interest in or right to, whether legal or equitable." Id. at 168, 171. The settlement agreement also contained a provision stating that, "[i]t is understood and agreed that this is an agreement to settle all property rights[.]" Id at 171. The settlement agreement further contained an integration clause stating, that "[e]ach party hereto acknowledges . . . that this Agreement constitutes all of the terms of the contract between said parties." Id. On March 18, 2011, the dissolution court approved the Ellises' proposed Settlement Agreement. Notably, however, the settlement agreement contained no mention of any ownership interest or shares of Keystone.

In November 2011, Huseyin resigned from Keystone. He also transferred $2,500,000 from Keystone to an organization he owned[2] to compensate him for what he believed was his share of the value of Keystone. Ellis questioned Ersal about Huseyin's departure from Keystone, asking in an email if Huseyin was "still partners with us?" and if there would be a "distribution to shareholders

---

[2] According to the bank statement listing the $2,500,000 transfer, the money was transferred from Keystone to KeyEnterprises. Appellant's App. Vol. 5, p. 177.

soon for 2011." Appellant's App. Vol. 6, p. 124. Ersal responded with an email stating:

> Christi is trying to put the [Keystone] financials together by next week. I am not sure if there will be any profit sharing distribution at this time. I will let you know after I review the financials.
>
> Sain [i.e., Huseyin] is not involved in Keystone.

*Id.* at 123.

[10] Ellis continued to pressure Ersal for documentation formalizing his ownership interest in Keystone. In March 2012, Ersal and Ellis had a meeting at which they discussed Ellis's ownership interest in Keystone. Ellis recorded this conversation, and stated that he had met with his attorneys who had sent him documentation for what he referred to as "the partnership thing." Appellant's App. Vol. 6, p. 79. But instead of showing Ellis with a 20% interest, the documents Ersal presented to Ellis showed Ellis with only a 5% interest in Keystone. Ellis rejected this, stating that he was supposed to be a "partner" from "day one" and stated that he and Ersal had discussed a "10 to 20 percent" ownership interest. *Id.* at 92-93. Ersal denied that this had been the case.

[11] Ellis and Ersal were unable to come to an agreement regarding the ownership of Keystone, and Ellis resigned from the company in May 2012. On June 1, 2012, Ellis sent a letter to Keystone seeking access to certain financial and corporate records of Keystone, asserting rights he would have as a shareholder. Keystone responded by filing a complaint on June 15, 2012, seeking a declaratory judgment that Ellis was not a shareholder or partner in Keystone.

Ellis responded on July 26, 2012, with an answer to the complaint, affirmative defenses, and seven counterclaims alleging breach of fiduciary duty; fraud and constructive fraud; breach of contract, promissory estoppel, conversion; and unjust enrichment; and also requesting compulsory production of corporate records; an accounting; a declaratory judgment and imposition of a constructive trust.

[12] After various filings by both parties, Keystone filed a motion for judgment on the pleadings on January 31, 2013, with regard to Ellis's counterclaims of breach of fiduciary duty, conversion, and fraud and constructive fraud. After Ellis filed a response, the trial court granted Keystone's motion on March 25, 2013. Keystone then filed a motion for summary judgment on May 12, 2014. Ellis responded to this motion after successfully seeking an extension of time, and the trial court denied Keystone's motion on August 12, 2014.

[13] Undeterred, on November 17, 2015, Keystone filed another motion for summary judgment as to the issue of damages. And before the trial court could issue a ruling on this motion, on December 14, 2015, Keystone filed a motion to renew its previously-denied motion for summary judgment on the grounds of newly discovered evidence. In this motion, Keystone sought summary judgment on the grounds of judicial estoppel, noting that Ellis's settlement agreement with his ex-wife Brooke contained no mention of any stock or ownership interest in Keystone and claiming that Ellis was therefore estopped from asserting an ownership interest in the present case. Ellis responded to both motions for summary judgment, and Keystone filed replies.

On May 27, 2016, the trial court held a hearing on Keystone's motion for summary judgment based on judicial estoppel. The trial court issued an order on June 6, 2015, granting Keystone's motion for summary judgment. Keystone then moved for entry of final judgment, which the trial court granted on July 12, 2016, by entering an order of final judgment in favor of Keystone. Ellis now appeals.

## Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Knighten v. E. Chi. Hous. Auth.*, 45 N.E.3d 788, 791 (Ind. 2015). The movant's burden is to show that its designated evidence, with all conflicts, doubts, and reasonable inferences resolved in the non-moving party's favor, affirmatively negates the non-moving party's claim. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The burden then shifts to the non-moving party to show an issue of fact affecting the outcome of the case that requires resolution by the fact-finder. *Id.* We review the trial court's ruling *de novo* as a question of law, taking care that the nonmovant is not improperly denied her day in court. *Id.* We may affirm denial of summary judgment on any theory or basis found in the designated evidence. *Chang v. Purdue Univ.*, 985 N.E.2d 35, 45 (Ind. Ct. App. 2013), *trans. denied*.

# Judicial Estoppel

[16] Ellis contends that the trial court erred when it determined that his claim of having a share of ownership of Keystone is barred due to judicial estoppel. Judicial estoppel is a judicially created doctrine that seeks to prevent a litigant from asserting a position that is inconsistent with one asserted in the same or a previous proceeding. *Morgan Cty. Hosp. v. Upham*, 884 N.E.2d 275, 280 (Ind. Ct. App. 2008), *trans. denied* (citing *Robson v. Texas E. Corp.*, 833 N.E.2d 461, 465 (Ind. Ct. App. 2005)). The doctrine is not intended to eliminate all inconsistencies, but is instead designed to prevent litigants from playing "fast and loose" with the courts. *Id*. Thus, the primary purpose of judicial estoppel is to protect the integrity of the judiciary, not to protect litigants. *Id*. (citing *Robson*, 833 N.E.2d at 466). As we have explained before, "[t]he basic principle of judicial estoppel is that, absent a good explanation, a party should not be permitted to gain an advantage by litigating on one theory and then pursue an incompatible theory in subsequent litigation." *Id*. Judicial estoppel applies only to intentional misrepresentation. *Id*. Accordingly, "the dispositive issue supporting the application of judicial estoppel is the bad-faith intent of the litigant subject to estoppel." *Id*.

[17] Unlike equitable estoppel, which focuses on the relationship between the parties, judicial estoppel focuses on the relationship between a litigant and the judicial system. *Turner v. Stuck*, 778 N.E.2d 429, 432 (Ind. Ct. App. 2002). That is, judicial estoppel is intended to protect the integrity of the judicial system

rather than to protect litigants from allegedly improper action by their opponents. *Id*.

This court has held that judicial estoppel is applicable when a bankrupt debtor fails to disclose a cause of action as an asset in bankruptcy proceedings and then pursues the omitted cause of action in a subsequent proceeding. *Upham*, 884 N.E.2d at 280 (citing *Robson,* 833 N.E.2d at 465). In this context, we adopted a burden-shifting approach to determine whether to apply judicial estoppel. *Id*. An inference of bad faith arises when the party asserting judicial estoppel, typically the defendant, demonstrates that the plaintiff-debtor had knowledge of an unscheduled claim and motive for concealment in the face of a duty to disclose. *Id*. If the defendant establishes the plaintiff's knowledge of a claim and motive for concealment, the debtor-plaintiff then has the burden of coming forth with evidence indicating that the nondisclosure was made in good faith. *Id*. (citing *Robson*, 833 N.E.2d at 467). Thus, while the plaintiff's knowledge and motive are "important in establishing judicial estoppel, the inquiry does not end there if the debtor-plaintiff comes forward with evidence indicating that the non-disclosure was made in good faith." *Id*.

In applying this burden-shifting test, it is important to remember that the ultimate purpose of the test is to determine the actual presence of bad faith. *Id*. Indeed, judicial estoppel "is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims[.]" *Id*. (citing *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 364 (3rd Cir. 1996)). Therefore, the dispositive question is whether the plaintiff was playing "fast and

loose" with the courts, not whether the plaintiff merely omitted a claim on her bankruptcy schedule (or, in the present case, failed to disclose assets in settlement agreement). *See id.*

[20] This balance-shifting test is applicable here, where the Ellis filed a document with the dissolution court purporting to list all of his assets, yet omitted the ownership interest he now claims. This court has applied judicial estoppel in a similar situation. In *Turner v. Stuck*, the parties entered into an oral partnership to purchase a boat. 778 N.E.2d at 430. Several years after the purchase of the boat, Stuck sued to dissolve the partnership and sell the boat. *Id.* Turner then executed a document to assign his interest in the boat to his uncle. *Id.* But Turner answered Stuck's complaint by counterclaiming for his share of the value of the boat. *Id.* And before the litigation over the boat had commenced, Turner's wife filed to dissolve their marriage. *Id.* In the property settlement agreement reached by the parties, Turner affirmatively denied owning the boat. *Id.* On appeal from a grant of summary judgment in favor of Stuck, we held that Turner was judicially estopped from claiming ownership in the boat:

> Turner's position in the dissolution proceeding was that he did not own the boat, which is contrary to his later assertion that he does in fact own the boat as a partnership asset and that this interest has not been transferred or assigned to anyone else. Turner took the position that he did not own the boat in the dissolution proceeding to prevent the boat from becoming part of the marital estate. In the present litigation, he may not now argue the opposite position.

*Id.* at 432. Keystone argues that the same is true here, and that judicial estoppel should apply to bar Ellis from claiming an ownership interest in Keystone.

[21] Under the burden-shifting test set forth in *Upham* and *Robson*, Keystone has established that Ellis failed to disclose his claimed ownership interest in Keystone to the dissolution court. Keystone also established Ellis had knowledge of his claim and a motive for concealment, i.e. to hide the assets from the dissolution court. As set forth in *Upham* and *Robson*, if the defendant establishes the plaintiff's knowledge of a claim and motive for concealment, the plaintiff then has the burden of coming forth with evidence indicating that the nondisclosure was made in good faith. *Id.*

[22] Ellis claims that he designated evidence establishing a genuine issue of material fact with regard to whether his non-disclosure of his claimed ownership interest in Keystone in his settlement agreement was made in good faith. He refers to the affidavits he and his ex-wife Brooke made showing that the couple intentionally left the Keystone interest out of the settlement agreement because they did not want to delay the dissolution proceedings. *See, e.g.*, Appellant's App., Vol. 4, pp. 27-28 (affidavit of Brooke Ellis in which she averred that she was aware of the ownership dispute between Ellis and Ersal, that she and Ellis agreed that they would "address [Brooke's] interest in those shares" after the dispute was resolved, and that she did not believe that Ellis intended to deceive her with regard to his ownership interest in Keystone); *id.*, Vol. 7, pp. 38-39 (supplemental affidavit of Brooke Ellis in which she averred that "it was not [her] intent to deceive the [dissolution court] by filing the divorce Settlement

Agreement," that she signed the Settlement Agreement despite its failure to list Ellis's claimed ownership interest in Keystone so she could simply "be divorced" as quickly as possible, and that she and Ellis had agreed to an "equitable split" of his ownership interest in Keystone); *id.*, Vol. 7, pp. 90-91 (deposition of Jason Ellis in which he admits to not listing his claimed ownership in Keystone as a marital asset so he could "sort . . . out" his dispute with Ersal).

[23] Even if we view this evidence in the light most favorable to Ellis, it establishes that his omission of his claimed ownership interest in Keystone was *intentional*, not merely a good-faith mistake, as was the case in *Upham*. *See Upham,* 884 N.E.2d at 283 (holding Upham's affidavit created a genuine issue of material fact about whether the nondisclosure of her malpractice action was a good-faith mistake).

[24] We acknowledge, as we did in *Upham*, that "summary judgment is particularly problematic in cases such as this one because the ultimate issue to be decided is the plaintiff[]'s intent to play fast and loose with the courts." 884 N.E.2d at 283. But here, both Ellis and Brooke admitted in their affidavits that they knew about Ellis's claimed ownership interest in Keystone, yet intentionally left this out of the Settlement Agreement which purported to divide the marital assets. While this evidence might prevent a claim of fraud between the parties, we do not consider this as evidence of good faith as it pertains to the court. To the contrary, it was an intentional act to keep from the dissolution court a

potentially large marital asset. Indeed, the Settlement Agreement itself stated that

> Husband and Wife hereby represent and warrant to each other that there has been a *full disclosure of assets* and that *the property referred to in this Agreement represents **all** the property of any sort whatsoever and wheresoever located, real, personal, or mixed, which either of them have an interest in or right to, whether legal or equitable.*
>
> * * *
>
> Each party hereto acknowledges that no representations of any kind have been made to him or her as an inducement to enter into this Settlement Agreement, other than the representations set forth herein, and that *this Agreement constitutes **all** of the terms of the contract between said parties.*
>
> * * *
>
> It is understood and agreed that *this is an agreement to settle **all** property rights and other issues between Husband and Wife* in the event a dissolution should be granted by the Court.

Appellant's App., Vol. 3, p. 171 (emphasis supplied).

[25] Ellis's designated evidence simply shows that he and his ex-wife were intentionally keeping from the dissolution court the existence of a potentially large marital asset (Ellis's twenty-percent claim of an allegedly multi-million-dollar corporation). Under these facts and circumstances, we agree with the trial court that Ellis has not established a genuine issue of material fact with regard to the issue of his good faith in omitting his claimed ownership interest in Keystone from his dissolution Settlement Agreement.

[26]     All of Ellis's claims are based upon his position that he is entitled to an ownership interest in Keystone. As we have concluded that Ellis is judicially estopped from asserting any such interest, the remainder of his claims necessarily fail. For example, Ellis's claim of breach of a fiduciary duty presumes that he was a shareholder. Since Ellis is judicially estopped from asserting a claim that he is a shareholder, his claim of breach of a fiduciary duty fails.[3] And to the extent that Ellis's claim for monetary damages was based on his allegation of a breach of a fiduciary duty, this claim also fails.

[27]     The same is true with regard to Ellis's claims for breach of contract, promissory estoppel, and unjust enrichment. Ellis summarizes his allegations on these claims as follows:

> Keystone agreed to provide Mr. Ellis twenty percent (20%) of Keystone's stock. He also alleges that he has not received that stock, and has not received dividends. He also alleges that Keystone has declared that he is no longer a shareholder in breach of the agreement. Finally, he alleges he has been damaged by Keystone's withholding of dividends and profits.

Appellant's Br. at 39–40 (record citations omitted).

---

[3] Nevertheless, the general rule is that the directors, and not the corporation itself, owe a fiduciary duty to shareholders. *Ormond v. Anthem, Inc.*, 799 F. Supp. 2d 910, 936, 2011 WL 2619618 (S.D. Ind. 2011) (citing *Arnold v. Soc'y For Savs. Bancorp, Inc.*, 678 A.2d 533, 539–540 (Del. 1996)); *Radol v. Thomas*, 772 F.2d 244, 258 (6th Cir. 1985) ("There is not, and could not conceptually be any authority that a corporation as an entity has a fiduciary duty to its shareholders."); *see also G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 238 (Ind. 2001) (holding that corporation could not be held liable for damages awarded due to the majority shareholder's breach of his fiduciary duty, and therefore the recovery for any breach of fiduciary duty comes from Goldsmith [the majority shareholder], not G&N [the corporation].").

Again, these claims are based on his right to assert a claim that he is, in fact, entitled to be a shareholder in Keystone. But we have concluded that judicial estoppel prevents Ellis from asserting any such interest. Accordingly, these claims also fail. And since Ellis's claims are all precluded by judicial estoppel, there is no need for further discovery, as Ellis also requests.

## Conclusion

The trial court did not err in concluding that Ellis, by intentionally omitting his claimed ownership interest in Keystone from his dissolution Settlement Agreement, is now judicially estopped from asserting a claim of an ownership interest in Keystone. The trial court therefore properly granted summary judgment in favor of Keystone.

Affirmed.

Kirsch, J., and Altice, J., concur.