**MORGAN COUNTY HOSPITAL, Richard J. Eisenhut, M.D., Unity Physicians, Kendrick Family Practice, and Donald Baird, D.O., Appellants,**

v.

**Maria UPHAM, as Surviving Spouse and Personal Representative of the Estate of Wilbur A. Upham, Deceased, Appellee.**

No. 55A04–0706–CV–316.

Court of Appeals of Indiana.

April 11, 2008.

Robert Ziegler, Edna M. Koch, Ziegler Cohen & Koch, Indianapolis, IN, Attor-neys for Appellants Morgan County Hospital, Richard J. Eisenhut, M.D., and Unity Physicians.

Peter H. Pogue, Catherine L. Kyle, Schultz & Pogue, LLP, Indianapolis, IN, Attorneys for Appellant Kendrick Family Practice and Donald Baird, D.O.

Karen Neiswinger, Indianapolis, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Morgan County Hospital, Dr. Richard J. Eisenhut, Unity Physicians, Kendrick Family Practice, and Dr. Donald Baird (collectively Appellants) appeal the trial court's denial of their motions for summary judgment on Maria Upham's claims relating to the death of her husband Wilbur A. Upham. Appellants raise the following restated issue: Did the trial court properly deny Appellants' motions for summary judgment?

We affirm.

In April 1997, Upham's husband Wilbur died from an abdominal aortic aneurysm. Upham was appointed as the personal representative of Wilbur's estate and filed a complaint with the Indiana Department of Insurance against Appellants, Wilbur's healthcare providers, alleging a claim for wrongful death on June 2, 1998. Thereafter, Appellants served interrogatories upon Upham. In her interrogatory answers, provided to Appellants on November 4, 1998, Upham stated that she had never filed for bankruptcy. A Department of Insurance medical review panel issued an opinion in favor of Appellants on December 21, 2001, finding that the evidence did not support the conclusion that Appellants failed to meet the applicable standard of care.

On June 14, 2002, Upham, who was represented by counsel, filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Indiana. As part of her petition, Upham completed a Statement of Financial Affairs and various schedules that asked for information about her property, income, and creditors. Upham signed the petition, schedules, and Statement of Financial Affairs under penalty of perjury averring that the information she provided in these documents was true and correct.

In the Statement of Financial Affairs, Upham was asked to "[l]ist all lawsuits & administrative proceedings you were a party to within 1 year of today, whether as a plaintiff or defendant or other party: include divorces, injury claims, employment claims and all others." *Appellant's Appendix*, Vol. 1 at 37. Upham listed two actions. The first was a collection claim filed by Plainfield Tire Center against Upham in Hendricks Superior Court 3. The second was a mortgage foreclosure action filed against Upham in the Morgan Circuit Court. Upham did not list her claims against Appellants.

Under schedule B of the bankruptcy petition, Upham was asked to disclose all "[c]ontingent and [n]on-contingent interests in estate of decedent...." *Id.* at 43. Upham responded, "None". *Id.* Schedule B also asked Upham to list any "[o]ther contingent and unliquidated claims of every nature...." *Id.* Upham did not identify any other claims.

Upham filed the instant action against Appellants on November 15, 2002. Thereafter, on January 21, 2005, Upham filed an Amended Declaration with the bankruptcy court. Upham did not disclose in her Amended Declaration her action against Appellants.

Appellants deposed Upham on September 13, 2006. During the deposition, Upham testified that she filed for bankruptcy in 2002. At that time, Upham had not amended her 1998 interrogatory answers to reflect that she had filed for bankruptcy.

As of September 2006, Upham's bankruptcy action remained open. After her deposition, Upham filed a motion with the bankruptcy court informing it of her action against Appellants. On October 24, 2006, the bankruptcy court issued an order specifying that any sums recovered from Upham's action against Appellants must be reported to the court and the trustee and would be distributed to Upham's creditors.

The Appellants filed motions for summary judgment in the fall of 2006. Each of the Appellants argued they were entitled to summary judgment because (1) Upham did not have standing to bring her claims;[1] and (2) judicial estoppel barred Upham's claims because she failed to disclose her action against the Appellants to the bankruptcy court. In responding to Appellants' motions for summary judgment, Upham submitted her affidavit, which states as follows:

> I did not list [the instant] case as an asset when I filed bankruptcy. This was a mistake on my part, but I did not intend to mislead the bankruptcy court or my creditors that I had a possible asset available to satisfy my debts. When the attorney for Dr. Eisenhut asked me about bankruptcy, I admitted that I had filed bankruptcy. After my deposition, my attorney promptly contacted the bankruptcy trustee and noti-

---

1. Appellants do not raise standing as an issue in this appeal. Therefore, we do not address this issue.

fied the bankruptcy court. We requested the bankruptcy court to approve this lawsuit continuing with the understanding that my attorney will turn over any money I might receive to the bankruptcy trustee after payment of attorney fees and expenses. In my bankruptcy, I did list lawsuits in which I was being sued or there was a judgment against me, because I understood that the purpose of bankruptcy was to protect me from judgment and garnishments and to make payments as ordered. I did not fully understand that a malpractice claim that had been on file for many years, and for which there was no guarantee that I would win or it would ever produce money, is still considered to be an asset. I am sorry for this mistake, which was the result of a misunderstanding on my part, and have taken steps to correct my error.

*Appellant's Appendix*, Vol. 1 at 199–200.

The trial court held a hearing on Appellants' motions for summary judgment on December 15, 2006. It then issued an order on January 4, 2007 that provides as follows:

> The Court finds the *Robson v. Texas Eastern Corp.*, 883 N.E.2d [sic] (Ind. App.2005[) ] opinion is on point.
>
> * * *
>
> The Court now because of all it's [sic] statements on record, and its interpretation of *Robson* grants summary judgment on all motions that apply to the issue of failure to disclose in the filing of the Chapter 13 Bankruptcy and finds that "judicial estoppel applies to plaintiff's claims," and that the plaintiff is estopped from pursuing her claim against [Appellants].

*Id.* at 21. On January 16, 2007, Upham filed a motion to correct error/motion to reconsider asking the trial court to recon-

sider its January 4, 2007 ruling. The trial court held a hearing on Upham's motion on March 14, 2007, and on April 9, 2007 issued an order granting Upham's motion to correct error/motion to reconsider and denied Appellants' motions for summary judgment. The trial court certified the case for interlocutory appeal, we accepted jurisdiction, and this appeal ensued.

Our standard of review for a summary judgment order is well settled. Summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Huntington v. Riggs*, 862 N.E.2d 1263 (Ind.Ct.App.2007), *trans. denied.* If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue of material fact for trial. *Id.* "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." *Huntington v. Riggs*, 862 N.E.2d at 1266.

"On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage." *Id.* We do not reweigh the evidence, and we will liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Huntington v. Riggs*, 862 N.E.2d 1263.

Appellants argue that the trial court erred in denying their motions for summary judgment. Appellants specifically contend that Upham's action against them is subject to judicial estoppel because Upham did not disclose this action as an asset in her bankruptcy proceeding.

■ Judicial estoppel is a judicially created doctrine that seeks to prevent a litigant from asserting a position that is inconsistent with one asserted in the same or a previous proceeding. *Robson v. Texas E. Corp.*, 833 N.E.2d 461 (Ind.Ct.App. 2005), *trans. denied.* "Judicial estoppel is not intended to eliminate all inconsistencies; rather, it is designed to prevent litigants from playing 'fast and loose' with the courts. The primary purpose of judicial estoppel is not to protect litigants but to protect the integrity of the judiciary." *Id.* at 466 (citations omitted). "The basic principle of judicial estoppel is that, absent a good explanation, a party should not be permitted to gain an advantage by litigating on one theory and then pursue an incompatible theory in subsequent litigation." *Id.* "Judicial estoppel only applies to intentional misrepresentation, so the dispositive issue supporting the application of judicial estoppel is the bad-faith intent of the litigant subject to estoppel." *Id.*

■ "Judicial estoppel is applicable when a bankrupt debtor fails to disclose a cause of action as an asset in bankruptcy proceedings and then pursues the omitted cause of action in a subsequent proceeding." *Id.* In *Robson,* we adopted a burden shifting approach for assessing whether to apply the doctrine of judicial estoppel to causes of action not scheduled as an asset in bankruptcy proceedings. *Robson v. Texas E. Corp.*, 833 N.E.2d 461. An inference of bad faith arises when the party asserting judicial estoppel demonstrates that a debtor-plaintiff had knowledge of an unscheduled claim and motive for conceal-

ment in the face of a duty to disclose. *Id.* "If the party asserting judicial estoppel establishes knowledge of a claim and motive for concealment, the debtor-plaintiff then has the burden of coming forth with evidence indicating that the nondisclosure was made in good faith." *Id.* at 467. While knowledge and motive are important in establishing judicial estoppel, the inquiry does not end there if the debtor-plaintiff comes forward with evidence indicating that the non-disclosure was made in good faith. *Robson v. Texas E. Corp.*, 833 N.E.2d 461. In applying the burden-shifting test, it is important to remember that the ultimate purpose of the test is to determine the actual presence of bad faith. *Id.* When considering the applicability of judicial estoppel, we must give due consideration to all of the circumstances of a particular case. *Burnes v. Pemco Aeroplex Inc.*, 291 F.3d 1282 (11th Cir.2002). Judicial estoppel is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims. *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355 (3rd Cir.1996). "When determining whether judicial estoppel is applicable, the dispositive question is not whether the trustee was aware of the unscheduled claim; the dispositive question is whether the debtor-plaintiff was playing fast and loose with the courts." *Robson v. Texas E. Corp.*, 833 N.E.2d at 471.

■ Appellants argue that Upham's action against them should be subject to judicial estoppel because she concealed this action from the bankruptcy court in bad faith. Appellants assert that an inference of bad faith can be drawn here based on Upham's knowledge of her claim against Appellants at the time she filed her bankruptcy petition and because Upham had motive to conceal this action from the bankruptcy court.

The record reveals that Upham's husband died in April 1997 and that she filed a complaint with the Indiana Department of Insurance against Appellants on June 2, 1998 alleging a claim for wrongful death. A medical review panel issued an opinion on Upham's complaint on December 21, 2001 that was favorable to Appellants. Upham filed for bankruptcy on June 14, 2002. Based on this, we agree with Appellants that Upham had knowledge of her claim against Appellants at the time she filed her bankruptcy petition.

We also agree with Appellants that Upham had motive to conceal this action from the bankruptcy court. Upham was appointed as her deceased husband's personal representative. By not disclosing this action to the bankruptcy court, any sums Upham recovered would go to her rather than her creditors.

Because Appellants have established an inference of bad faith, the burden shifts to Upham to show that the nondisclosure of her action against Appellants was made in good faith. To do this, Upham principally relies upon her affidavit that she submitted with her response to Appellants' motions for summary judgment.

Appellants argue that Upham cannot create a genuine issue of material fact by submitting an affidavit that contradicts her earlier sworn statements made in the documents she submitted to the bankruptcy court. We have previously stated that "[a] party cannot create a material fact for summary judgment purposes by contradicting a prior sworn statement." *Chance v. State Auto Ins. Companies*, 684 N.E.2d 569, 571 (Ind.Ct.App.1997), *trans. denied.* Appellants do not point out what specific statements in the documents Upham submitted to the bankruptcy court are contradicted by her affidavit. In the documents Upham submitted to the bankruptcy court, she did not disclose this case. Upham's affidavit does not deny this. She, in fact, readily admits that she "did not list this case as an asset when I filed bankruptcy." *Appellants' Appendix*, Vol. 1 at 199. The remainder of her affidavit explains why she did not disclose this action to the bankruptcy court. Thus, Upham's affidavit does not contradict a prior sworn statement.

 Appellants also argue that Upham's affidavit contains inadmissible legal conclusions that cannot be used to create material issues of fact. Appellants do not identify what specific portions of Upham's affidavit assert legal conclusions. The majority of Upham's affidavit explains why she did not disclose her action against Appellants to the bankruptcy court. The closest Upham comes to making a legal conclusion is when she states, "I did not intend to mislead the bankruptcy court or my creditors that I had a possible asset available to satisfy my debts." *Id.* at 199–200. Upham's affidavit does not contain inadmissible legal conclusions.

The next question is whether Upham's affidavit creates a genuine issue of material fact about whether her failure to disclose this action to the bankruptcy court was done in good faith. We first note that in her affidavit, Upham states that after admitting at her deposition that she had filed for bankruptcy, she promptly informed the trustee and the bankruptcy court about this action. In *Robson*, we explained:

[N]otification of the trustee of an unscheduled asset should not create a hard and fast rule constituting sufficient evidence to defeat a judicial estoppel claim.

\* \* \*

Trustee notification could suggest a good-faith attempt to comply with bankruptcy disclosure requirements in some

contexts and might not in others. For this reason, trustee notification by itself is not "sufficient" evidence of good faith. Rather, trustee notification should be considered in context with the other evidence to make a commonsense determination as to whether the debtor-plaintiff was playing fast and loose with the courts. *Robson v. Texas E. Corp.*, 833 N.E.2d at 471. Thus, while Upham's notification to the trustee and the bankruptcy court is some evidence of good faith on her part, it alone is not sufficient evidence to preclude the application of judicial estoppel.

In the remainder of her affidavit, Upham states that her failure to disclose her claim against Appellants to the bankruptcy court was a mistake and that she did not intend to mislead the bankruptcy court or her creditors. She explains that she disclosed two suits that were filed against her because she believed the purpose of the bankruptcy proceeding was to protect her. In discussing her claim against Appellants, Upham says, "I did not fully understand that a malpractice claim that had been on file for many years, and for which there was no guarantee that I would win or it would ever produce money, is still considered to be an asset." *Appellants' Appendix*, Vol. 1 at 200. These assertions suggest that Upham's failure to disclose her claims against Appellants to the bankruptcy court was due to mistake and a misunderstanding of the law rather than because of a bad faith effort on her part to play fast and loose with the courts.

Other courts have held that judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence. *See New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (indicating that the Court did not question that it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1049 (8th Cir.2006) (judicial estoppel does not apply when a debtor's prior position was taken because of a good-faith mistake rather than as part of a scheme to mislead the court); *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894 (6th Cir.2004) (application of judicial estoppel is inappropriate when the debtor's omission is the result of mistake or inadvertence); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d at 1286–87 ("[plaintiff] is correct that the doctrine of judicial estoppel applies in situations involving intentional contradictions, not simple error or inadvertence"); *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196–97 (4th Cir.1998) ("judicial estoppel will not be applied where the party's inconsistent positions resulted from inadvertence or mistake"), *cert. denied* 526 U.S. 1098, 119 S.Ct. 1576, 143 L.Ed.2d 671; *Helfand v. Gerson*, 105 F.3d 530 (9th Cir. 1997) (judicial estoppel inappropriate when a party's prior position was based on inadvertence or mistake); *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355 (judicial estoppel does not apply when a debtor's prior position was taken because of a good-faith mistake rather than as part of a scheme to mislead the court); *EaglePicher Inc. v. Federal Ins. Co.*, 2007 WL 2265659 (D.Ariz.2007) (denying motion for summary judgment and concluding that application of judicial estoppel was inappropriate where questions of fact existed about plaintiff/debtor's state of mind and whether nondisclosure of claim to bankruptcy court was inadvertent); *Arnold v. ADT Sec. Services, Inc.*, 2007 WL 2885148 (W.D.Mo.2007) (denying motion for summary judgment and concluding that application of judicial estoppel was inappropriate where plaintiff/debtor's nondisclosure of race discrimination claim

to bankruptcy court was the inadvertent mistake of a layperson).

█ Furthermore, we note that summary judgment is particularly problematic in cases such as this one because the ultimate issue to be decided is the plaintiff/debtor's intent to play fast and loose with the courts. *Robson v. Texas E. Corp.*, 833 N.E.2d 461. Generally, issues concerning a party's state of mind are improper for summary judgment. *Best Homes v. Rainwater*, 714 N.E.2d 702 (Ind.Ct.App.1999). We conclude that Upham's affidavit does create a genuine issue of material fact about whether the nondisclosure of her malpractice action against Appellants was a good-faith mistake. Therefore, the trial court properly denied Appellants' motions for summary judgment.

Additionally, we think it relevant to note that judicial estoppel is an equitable doctrine. Before applying judicial estoppel, a court should consider all of the equities, which would include the interests of the plaintiff/debtor's creditors. The United States Court of Appeals for the Seventh Circuit has recently stated:

> Judges understandably favor rules that encourage full disclosure in bankruptcy. Yet pursuing that end by applying judicial estoppel to debtors' self-contradiction would have adverse effects on third parties: the creditors. [The debtor's] nondisclosure in bankruptcy harmed his creditors by hiding assets from them. Using this same nondisclosure to wipe out his [injury] claim would complete the job by denying creditors even the right to seek some share of the recovery.... Judicial estoppel is an equitable doctrine, and using it to land another blow to the victims of bankruptcy fraud is not an equitable application.

*Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir.2006). Application of judicial estoppel in this case could potentially have negative consequences for Upham's creditors by denying them an opportunity to recoup their losses should Upham prevail in this action. We believe that this further supports the trial court's denial of Appellants' motions for summary judgment.

As a final matter, we observe that Appellants have not explained how Upham's failure to divulge the existence of the bankruptcy action in any way prejudiced them in defending this lawsuit. In fact, from the Appellants' perspective, Upham's bankruptcy action is entirely unrelated to the medical malpractice action. Their potential liability for the alleged negligent medical treatment of Upham's husband, as is the case in any medical malpractice action, hinges upon the determinations of whether they breached the applicable standard of care, causing injury, and, if so, the amount of the damages resulting therefrom. Thus, we perceive no practical or equitable reason for awarding summary judgment to the Appellant's based on the fortuitous (thus would it be, from the Appellants' perspective, if we reversed on this basis) existence of Upham's bankruptcy action.

Judgment affirmed.

ROBB, J., and MATHIAS, J., concur.