

FILED

Jul 06 2023, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Nicholas G. Brunette
Katherine M. Haire
REMINGER CO., L.P.A.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

David W. Stone IV
Stone Law Office & Legal Research
Anderson, Indiana

Bradford J. Smith
Ken Nunn Law Office
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Red Lobster Restaurants LLC,

*Appellant-Defendant,*

and

Progressive Flooring Services, Inc.,
and Dwayne Featheroff,

*Defendants,*

v.

Abigail Fricke,

*Appellee-Plaintiff*

July 6, 2023

Court of Appeals Case No.
22A-CT-2221

Appeal from the Marion County
Superior Court

The Honorable Timothy Oakes,
Judge

Trial Court Cause No.
49D02-2008-CT-029481

**Opinion by Judge May**
Judges Mathias and Tavitas concur.

**May, Judge.**

Red Lobster Restaurants LLC ("Red Lobster") appeals the denial of its motion for summary judgment in a personal injury action filed against it by Abigail Fricke.[1] Red Lobster raises two issues, which we revise, restate, and reorder as:

> (1) Whether the trial court abused its discretion when it denied Red Lobster's motion to strike Fricke's affidavit opposing the motion for summary judgment; and
>
> (2) Whether the trial court erred when it denied Red Lobster's motion for summary judgment because:
>
>> (2.1) Fricke was judicially estopped from pursuing her claim against Red Lobster because she belatedly disclosed her claim to the Chapter 13 bankruptcy trustee; or
>>
>> (2.2) Fricke lacked standing to bring a claim against Red Lobster.

We affirm.

## Facts and Procedural History[2]

---

[1] Progressive Flooring Services, Inc., and Dwayne Featheroff are not parties to this appeal.

[2] We heard oral argument in this case on May 19, 2023, in Fort Wayne, Indiana. The event was hosted by the Indiana State Bar Association's Leadership Development Academy ("ISBA LDA") in the Allen County Courthouse. We are grateful to the ISBA LDA event organizers and the Allen County Courthouse Administrator for their hospitality in hosting the event. We also thank counsel for their presentations.

[2] On May 17, 2017, Fricke filed a Chapter 13 petition for bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana. The petition required Fricke to disclose whether she had any claims against third parties, including claims arising from accidents, employment disputes, insurance claims, or rights to sue, and Fricke indicated that she did not have any such claims. At the time Fricke filed for bankruptcy, she also executed a document entitled: "Rights and Responsibilities of Chapter 13 Debtors and their Attorneys." (App. Vol. II at 114) (emphasis removed). It explained the various responsibilities of the debtor after the bankruptcy case is filed, including agreeing to "[c]ontact the attorney promptly if the debtor acquires any property after the petition is filed. Such property might include, but is not limited to, personal injury proceeds, inheritances, lottery winnings, etc." (*Id.* at 115.)

[3] On September 8, 2017, the bankruptcy court entered an order confirming Fricke's payment plan.[3] The plan required Fricke to pay $1,350.00 a month to the bankruptcy trustee for a period of sixty months. The payment plan also

---

[3] A Chapter 13 bankruptcy plan is sometimes called a "wage earner plan" and requires the debtor to make payments over a period of several years before the debtor's debts are discharged:

> A Chapter 13 bankruptcy can be filed by an individual who has unsecured debts of less than $100,000 and secured debts of less than $350,000. A Chapter 13 Plan is an individual reorganization plan, and proposes a plan for modification of debt and/or repayment of debts over a three- or five-year plan. Debts not paid in full under the plan are discharged. A Chapter 13 Plan can be withdrawn at any time, which is not true of a Chapter 7 bankruptcy.

Deborah Benoit, Enforceability of Dissolution of Marriage Decrees in Bankruptcy, 48 J. Mo. B. 499, 503 (1992).

provided that "[i]f additional property comes into the estate pursuant to 11 U.S.C. § 1306(a)(1) or if the Trustee discovers undisclosed property of the estate, then the Trustee may obtain such property or its proceeds to increase the total amount to be paid under the plan." (*Id*. at 132.)

[4] On December 31, 2019, Fricke went to a Red Lobster restaurant in Indianapolis and tripped on an unmarked, elevated portion of the floor in the restaurant's lobby. On August 26, 2020, she sued the restaurant alleging Red Lobster negligently failed to maintain its premises in a safe condition.[4] During discovery, Fricke responded to interrogatories, including:

> 2. State whether you have ever been a party, plaintiff or defendant, in any lawsuit, whether civil or criminal, or a bankruptcy and identify the matter by Court, case number and caption. If a criminal case involved conviction for a felony or a misdemeanor involving dishonesty or false statements, also identify the date of conviction, court, case caption and sentence.
>
> **ANSWER:** No, I have not.

(*Id*. at 156.)

---

[4] Fricke also alleged Dwayne Featheroff and Progressive Flooring Services, Inc., negligently installed the floor in the restaurant. Progressive and Featheroff joined in Red Lobster's motion for summary judgment before the trial court but, as noted earlier, are not parties to this appeal.

[5]     On May 29, 2021, Red Lobster filed a motion for summary judgment. Red Lobster asserted:[5]

> As a matter of law, Defendant Red Lobster Restaurants LLC is not liable for the injuries claimed by Plaintiff Abigail Fricke because it is undisputed that Plaintiff has a bankruptcy action pending before the United States Bankruptcy Court, Southern District of Indiana, and she failed to properly disclose this lawsuit therein. As a result, Plaintiff Abigail Fricke is judicially estopped *and* lacks standing to pursue the instant action, and summary judgment must be granted.

(*Id*. at 42) (emphasis in original).

[6]     On June 11, 2021, Fricke filed an amended schedule of assets in the bankruptcy court, and in that schedule, she listed her personal injury action against Red Lobster as an asset. Fricke also filed a notice of retention and compensation terms in her bankruptcy proceeding. The notice disclosed that Fricke retained the Ken Nunn Law Office to pursue her personal injury claim against Red Lobster and the terms of her compensation agreement with the law firm. The notice also explained:

> 4. The Chapter 13 Trustee has been advised of the terms of compensation and consents to those terms. The [Ken Nunn Law Office] has been advised of the Debtors' [sic] pending bankruptcy case, the obligation to provide information Regarding the Claim

---

[5] Red Lobster's motion for summary judgment also asserted it was entitled to summary judgment on the basis that it did not have notice of an unreasonable risk of harm from the elevated floor. However, the trial court bifurcated the issues on summary judgment, and Red Lobster appeals from the trial court's order denying its motion for summary judgment on only the issues of standing and judicial estoppel.

to the Trustee upon request, and the requirement to hold any funds received as a result of the settlement or resolution of the Claim until obtaining instructions from the Trustee or the Court.

5. The Debtor, Abigail Carol Fricke, shall remain in possession and control of the Claim and have the authority to settle. The Chapter 13 Trustee shall not be named or substituted as a party of interest, nor shall the Trustee be required to execute a release as part of any settlement of the Claim. The Debtor shall not dispose of any funds received [as] a result of settlement or distribution before obtaining consent of the Trustee.

6. If the bankruptcy case is still pending under Chapter 13 at the time the Claim is resolved either by settlement or court action, the Debtor shall advice [sic] the Chapter 13 Trustee of the resolution, including the compensation to be received by the [Ken Nunn Law Office].

(App. Vol. III at 89-90.)

[7]     On July 15, 2021, the bankruptcy trustee filed a motion to dismiss Fricke's bankruptcy case because Fricke was delinquent in her payments to the trustee.[6] Fricke initially filed an objection to the trustee's motion to dismiss in which she stated that she desired to come to an agreement with the trustee to resolve the

---

[6] The record before us does not include a copy of the motion to dismiss filed by the bankruptcy trustee. However, in its designation of evidence, Red Lobster asked the trial court to take judicial notice of the records in Fricke's bankruptcy proceeding, *In re: Abigail Carol Fricke*, Case No. 17-03681-JMC-13 (S.D. Ind.), and those records are accessible via the federal court's case management system PACER. *See* Ind. Rule of Evid. 201(a)(1)(B) (The court may judicially notice a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.") & 201(a)(2)(C) (records of a court of this state).

motion to dismiss, but Fricke later withdrew her objection. On September 22, 2021, the bankruptcy court granted the trustee's motion to dismiss.

[8] On November 4, 2021, Fricke filed her response in opposition to Red Lobster's motion for summary judgment. Fricke noted that "judicial estoppel is an equitable doctrine and requires that the Court consider the equities involved." (*Id*. at 17.) She explained she "mistakenly, without any intent to mislead, did not realize that she had to list her personal injury lawsuit as an asset in a bankruptcy that she had filed two and a half years earlier." (*Id*. at 17-18.) Fricke also asserted that Red Lobster's argument that she lacked standing to bring her personal injury claim was moot because her bankruptcy counsel gave notice to the bankruptcy court regarding the claim. In her designation of evidence supporting her summary judgment response, Fricke included an affidavit in which she averred:

> 5. At the time of the incident of December 31, 2019 and the filing of my lawsuit on August 24, 2020, I did not know that the personal injury lawsuit was considered an asset. I did not know that I needed to notify my bankruptcy attorney about it or that I needed to list it as an asset in the bankruptcy.
>
> 6. I was not trying to mislead anybody. Because I had filed for bankruptcy two and a half years earlier, it did not cross my mind that I needed to let my bankruptcy attorney know that I was involved in an incident on December 31, 2019 or that I was pursuing a lawsuit.
>
> 7. When I was answering interrogatory questions with the assistance of the Ken Nunn Law Office, I did not realize that the

bankruptcy was considered a lawsuit, because I was not suing anyone or being sued by anyone. I overlooked the word "bankruptcy" and thought I was answering correctly because I was not a plaintiff or a defendant in the bankruptcy. I did not mean to mislead anybody by failing to disclose my bankruptcy in my interrogatory responses. It was a mistake.

(*Id*. at 92-93.) On November 13, 2021, Red Lobster filed a motion to strike Fricke's affidavit from the designation of evidence. Red Lobster argued the affidavit should be stricken because it was self-contradictory and contradicted Fricke's prior sworn interrogatory answers. Fricke responded that the affidavit provided the court with information regarding her "state of mind and intent, which is directly relevant to deciding whether to dismiss her personal injury lawsuit based on the equitable doctrine of judicial estoppel." (*Id*. at 118.)

[9] The trial court held a hearing on Red Lobster's motion for summary judgment on December 20, 2021. On January 4, 2022, the trial court summarily denied both Red Lobster's motion to strike and its motion for summary judgment. The trial court certified the orders denying Red Lobster's motion to strike and motion for summary judgment for interlocutory appeal, and we accepted jurisdiction over the interlocutory appeal on October 14, 2022. On February 2, 2023, the trial court entered an order staying proceedings in the trial court pending the outcome of this interlocutory appeal.

# Discussion and Decision

## 1. Motion to Strike

We first address Red Lobster's contention that the trial court erred in denying its motion to strike Fricke's affidavit. "The trial court has broad discretion in ruling on motions to strike in the summary judgment context. Its decision will not be reversed unless prejudicial error is clearly demonstrated." *Hamilton v. Hamilton*, 132 N.E.3d 428, 431-32 (Ind. Ct. App. 2019).

"In ruling on a motion for summary judgment, the trial court will consider only properly designated evidence which would be admissible at trial." *Seth v. Midland Funding, LLC*, 997 N.E.2d 1139, 1141 (Ind. Ct. App. 2013). Trial Rule 56(E) requires affidavits designated either in support of or in opposition to a motion for summary judgment be made on personal knowledge, set forth facts as would be admissible in evidence, and affirmatively show that the affiant is competent to testify to the matters therein. These requirements "are mandatory and a court considering a summary judgment motion should disregard inadmissible information contained in supporting or opposing affidavits. The party offering the affidavit into evidence bears the burden of establishing its admissibility." *D.H. by A.M.J. v. Whipple*, 103 N.E.3d 1119, 1126 (Ind. Ct. App. 2018), *reh'g denied*, *trans. denied*.

In *Gaboury v. Ireland Rd. Grace Brethren, Inc.*, our Indiana Supreme Court explained "contradictory testimony contained in an affidavit of the nonmovant may not be used by him to defeat a summary judgment motion where the only

issue of fact raised by the affidavit is the credibility of the affiant." 446 N.E.2d 1310, 1314 (Ind. 1983) (quoting *Wachovia Mortg. Co. v. Autry-Barker-Spurrier Real Est., Inc.*, 249 S.E.2d 727, 732 (N.C. Ct. App. 1978), *reh'g denied*. Likewise, in *Chance v. State Auto Ins. Co.*, we stated: "A party cannot create an issue of material fact for summary judgment purposes by contradicting a prior sworn statement." 684 N.E.2d 569, 571 (Ind. Ct. App. 1997), *reh'g denied*, *trans. denied*. Thus, Red Lobster contends the trial court erred in denying its motion to strike Fricke's affidavit because the affidavit "contradicted Fricke's prior sworn interrogatory response and was inherently irreconcilable with itself." (Appellant's Br. at 27.) The restaurant asserts Fricke's statement that she "did not realize that the bankruptcy was considered a lawsuit" and her statement that she "'overlooked the word 'bankruptcy'"" in answering the interrogatory "are in direct conflict with each other." (*Id.* at 29-30) (quoting App. Vol. III at 92-93). Red Lobster argues: "Fricke could not have simultaneously overlooked the word 'bankruptcy' yet also been able to contemplate that her bankruptcy was not subject to disclosure regardless simply because she believed that she 'was not suing anyone or being sued by anyone.'" (*Id.* at 30.)

[13] However, Red Lobster's argument misses the boat. Fricke is not using her affidavit to contradict her prior sworn testimony. She is using the affidavit to explain her own mindset and intentions. While Fricke's averments are self-serving, a party may use "a perfunctory and self-serving" affidavit to demonstrate a genuine issue of material fact requiring resolution at trial. *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014). Fricke has consistently

asserted that her failure to notify the bankruptcy court earlier about her personal injury suit was nothing more than a good faith mistake. Both of Fricke's explanations for incorrectly answering the interrogatory—that she overlooked the word bankruptcy and that she did not think of her bankruptcy as a lawsuit because she was not suing anyone or being sued by anyone—explain why she believed she did not need to disclose the bankruptcy. They convey that Fricke was acting in good faith rather than trying to hide her bankruptcy. Therefore, we hold the trial court did not abuse its discretion in denying Red Lobster's motion to strike. *Cf. Bunger v. Brooks*, 12 N.E.3d 275, 281 (Ind. Ct. App. 2014) (holding trial court abused its discretion in striking doctor's affidavit because the affidavit did not contradict the doctor's deposition testimony).

## 2. Motion for Summary Judgment

[14] Our standard of review following a trial court's order on summary judgment is well-settled:

> When we review a grant or denial of a motion for summary judgment, our standard of review is the same as it is for the trial court. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012). The moving party must show there are no genuine issues of material fact and he is entitled to judgment as a matter of law. *Id*. If the moving party carries its burden, then the nonmoving party must present evidence establishing the existence of a genuine issue of material fact. *Id*. In deciding whether summary judgment is proper, we consider only the evidence the parties specifically designated to the trial court. Ind. Trial Rule 56(C), (H). We construe all factual inferences in favor of the non-moving party and resolve all doubts regarding the existence of a material issue against the moving party. *Reed*, 980 N.E.2d at 285.

*Asklar v. Gilb*, 9 N.E.3d 165, 167 (Ind. 2014). "We 'consciously err[ ] on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims.'" *Brown by Brown v. Southside Animal Shelter, Inc.*, 158 N.E.3d 401, 405 (Ind. Ct. App. 2020) (quoting *Hughley*, 15 N.E.3d at 1004), *aff'd on reh'g*, 162 N.E.3d 1121 (Ind. Ct. App. 2021), *trans. denied*.

### 2.1 Judicial Estoppel

[15] Red Lobster first argues it is entitled to summary judgment pursuant to the doctrine of judicial estoppel. "Judicial estoppel is a judicially created doctrine that seeks to prevent a litigant from asserting a position inconsistent with one asserted in the same or a previous proceeding." *Robson v. Texas E. Corp.*, 833 N.E.2d 461, 466 (Ind. Ct. App. 2005), *trans. denied*. It "is not intended to eliminate all inconsistencies; rather, it is designed to prevent litigants from playing 'fast and loose' with the courts." *Id*. "The basic principle of judicial estoppel is that, absent a good explanation, a party should not be permitted to gain an advantage by litigating on one theory and then pursue an incompatible theory in subsequent litigation." *Id*. "Judicial estoppel only applies to intentional misrepresentation, so the dispositive issue supporting the application of judicial estoppel is the bad-faith intent of the litigant subject to estoppel." *Id*.

[16] We apply a burden shifting test to determine whether judicial estoppel should bar a cause of action that was not scheduled as an asset in a bankruptcy proceeding. *Morgan Cnty. Hosp. v. Upham*, 884 N.E.2d 275, 280 (Ind. Ct. App. 2008), *trans. denied*. "An inference of bad faith arises when the party asserting judicial estoppel demonstrates that a debtor-plaintiff had knowledge of an

unscheduled claim and motive for concealment in the face of a duty to disclose." *Id*. If the party asserting judicial estoppel presents sufficient evidence to create an inference of bad faith, the debtor-plaintiff then has the burden of presenting evidence that the nondisclosure was made in good faith. *Id*. "While knowledge and motive are important in establishing judicial estoppel, the inquiry does not end there if the debtor-plaintiff comes forward with evidence indicating that the non-disclosure was made in good faith." *Id*. The "ultimate purpose" of the burden shifting test "is to determine the actual presence of bad faith." *Id*.

[17] When assessing whether to apply judicial estoppel, "we must give due consideration to all of the circumstances of a particular case." *Id*. It "is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims." *Id*. In *Spaine v. Cmty. Contacts, Inc.*, the Seventh Circuit explained that "[c]ourts do not apply judicial estoppel for the benefit of the defendant but try to protect courts and creditors from deception and manipulation. Judicial estoppel is an equitable doctrine intended to induce debtors to be truthful in their bankruptcy filings." 756 F.3d 542, 547 (7th Cir. 2014) (holding factual issue regarding whether Chapter 7 debtor intended to conceal employment discrimination claim precluded summary judgment) (internal quotation marks and brackets omitted).

[18] Red Lobster argues Fricke had a duty to disclose her personal injury claim in the bankruptcy proceeding. *See*, *e.g.*, *Cowling v. Rolls Royce Corp.*, No. 1:11-cv-01719, 2012 WL 4762143 at *2-4 (S.D. Ind. Oct. 5, 2012) (determining debtor-

plaintiff had a duty to disclose in his Chapter 13 bankruptcy proceeding an employment discrimination claim that the debtor-plaintiff acquired while his Chapter 13 bankruptcy proceeding was pending); *Rainey v. United Parcel Serv., Inc.*, 466 Fed. Appx. 542, 544 (7th Cir. 2012) ("Debtors have a continuing duty to schedule newly acquired assets while the bankruptcy case is open."). Yet, Red Lobster contends, despite this duty, Fricke did not disclose her personal injury claim to the bankruptcy trustee until after Red Lobster filed its motion for summary judgment. Fricke disputes whether she had a legal duty to amend her schedule of assets in the bankruptcy court to include her tort claim, but she disclosed the claim nonetheless.

[19] In *Upham*, Upham sued Morgan County Hospital and several of its doctors alleging medical malpractice in the death of her husband. 884 N.E.2d at 277. Upham did not list the claim as an asset when she filed for bankruptcy, and she only amended her schedule of assets when her bankruptcy came to light in the medical malpractice action. *Id.* at 278. Thereafter, the bankruptcy court issued an order that any sums obtained by Upham as a result of the medical malpractice action were to be reported to the court and the trustee and distributed to her creditors. *Id.* The hospital moved for summary judgment on the basis that Upham's claim was barred by judicial estoppel. *Id.* In response to the hospital's motion for summary judgment, Upham submitted an affidavit in which she attested that she did not intend to mislead the bankruptcy court, and she did not realize the medical malpractice claim was an asset. *Id.* at 278-79. The trial court denied the hospital's motion. *Id.* at 279.

We affirmed the trial court's denial of the hospital's summary judgment motion because a genuine issue of material fact existed regarding whether Upham's failure to disclose the medical malpractice action was a good-faith mistake. *Id*. at 283. We then went on to explain that judicial estoppel is an equitable doctrine, and "[b]efore applying judicial estoppel, a court should consider all of the equities, which would include the interests of the plaintiff/debtor's creditors." *Id*. We observed that "[a]pplication of judicial estoppel in this case could potentially have negative consequences for Upham's creditors by denying them an opportunity to recoup their losses should Upham prevail in this action." *Id*. We also noted the hospital failed to explain how Upham's belated disclosure in the bankruptcy action prejudiced the hospital. *Id*. Therefore, we concluded that "we perceive no practical or equitable reason for awarding summary judgment to the Appellant's [sic] based on the fortuitous (thus would it be, from the Appellants' perspective, if we reversed on this basis) existence of Upham's bankruptcy action." *Id*.

Like in *Upham*, Fricke averred that she did not intend to conceal her personal injury suit from the bankruptcy court. Consequently, a factual dispute exists regarding whether Fricke intentionally concealed the personal injury suit from the bankruptcy court. Moreover, the bankruptcy trustee moved to dismiss Fricke's bankruptcy petition after Fricke disclosed the personal injury suit to the trustee, and we fail to see how any of Fricke's creditors were harmed by her failure to disclose the suit earlier. Thus, as in *Upham*, we affirm the trial court's

denial of Red Lobster's motion for summary judgment based on judicial estoppel.[7]

## 2.2 Standing

[22] Red Lobster also argues it is entitled to summary judgment because Fricke did not have standing to initiate suit. "Standing refers to whether a party has an actual demonstrable injury for purposes of a lawsuit. The primary purpose of standing is to [ensure] that the party before the court has a substantive right to enforce the claim being made." *In re G.R.,* 863 N.E.2d 323, 326 (Ind. Ct. App. 2007) (internal citation omitted).

---

[7] During oral argument, Red Lobster also analogized the instant case to *Williams v. Hainje*, 375 Fed. Appx. 625 (7th Cir. 2010), *reh'g en banc denied*. In *Williams*, a police dog bit Anthony Williams, and Williams initiated a civil rights suit against the police officer who released the dog. *Id*. at 626. While the civil rights suit was pending, Williams filed a petition for Chapter 13 bankruptcy. *Id*. Williams did not disclose his civil rights claim when he filed his bankruptcy petition, but he nonetheless sought relief in the bankruptcy court from the medical debts he incurred after the police dog bit him. *Id*. The police officer in the civil rights action moved for summary judgment based on the doctrine of judicial estoppel, and the trial court granted the police officer's motion. *Id*. at 627. The Seventh Circuit affirmed. *Id*. at 628. Even though the bankruptcy court dismissed Williams's Chapter 13 petition while his appeal in the civil rights case was pending, the Court observed "Williams still received significant financial benefits during his short stint in bankruptcy." *Id*. at 627. Moreover, the Court held the district court reasonably inferred Williams made a knowing misrepresentation when he failed to disclose his civil rights claim to the bankruptcy court. *Id*. at 628.

However, unlike *Williams*, Fricke's personal injury claim arose after she filed her Chapter 13 bankruptcy petition, and the record does not indicate that Fricke tried to use her bankruptcy petition in one forum to avoid certain debts while at the same time, in a second forum, seeking recovery from an alleged tortfeasor for those debts. In addition, the trial court in *Williams* found that he intentionally concealed his civil rights claim when he omitted it from the schedule of assets he filed with the trial court, and the Seventh Circuit held that finding was not clear error. *Id*. Here, the trial court made no similar finding, and the parties dispute whether Fricke intentionally concealed her tort claim in the bankruptcy proceeding. Where, as here, genuine issues of material fact exist, denial of summary judgment is appropriate.

[23]     Red Lobster asserts a lack of standing because Fricke sued in her own name rather than in the name of the bankruptcy estate. Federal Rule of Bankruptcy Procedure 6009 provides:

> With or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.

In *Cable v. Ivy Tech State Coll.*, the Seventh Circuit explained that "[t]he Chapter 13 debtor has standing to bring claims that benefit the estate." 200 F.3d 965, 967 n.1 (7th Cir. 1999), *overruled on other grounds by Hall v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013). Other United States Circuit Courts of Appeals have likewise held Chapter 13 debtors have standing to bring suits in their own names on behalf of the estate. *See*, *e.g.*, *Dufrene v. ConAgra Foods, Inc.*, 196 F. Supp. 3d 979, 982 (D. Minn. 2016) ("[A]t least six circuit courts of appeals have concluded that Chapter 13 debtors have standing to pursue causes of action in their own name on behalf of the bankruptcy estate.").

[24]     Nevertheless, Red Lobster contends a debtor can only act on behalf of the estate when the debtor has disclosed the cause of action to the bankruptcy court, trustee, and creditors. Therefore, Red Lobster argues, Fricke was not acting on behalf of the estate when she brought the instant personal injury suit in her own name. We disagree.

Fricke had standing because she sustained a direct injury. *Lorenz v. Anonymous Physician #1*, 51 N.E.3d 391, 397 (Ind. Ct. App. 2016) ("the bankrupt party does have standing to sue because he is the party who sustained a direct injury as a result of the conduct at issue"). We also do not accept Red Lobster's argument that Fricke was not acting on behalf of the estate in pursuing her personal injury lawsuit. The trustee did not intervene when Fricke disclosed the nature of her personal injury claim and the terms of her compensation agreement with the law firm representing her in the personal injury action. Fricke remained "in possession and control of the Claim and [had] the authority to settle." (App. Vol. III at 90.) Fricke was also under an obligation to advise the trustee upon the resolution of her claim and to not dispose of any funds without first obtaining the consent of the trustee. Thus, had Fricke's bankruptcy petition not been dismissed, any recovery would have been available to satisfy her creditors. The trial court properly rejected Red Lobster's argument that Fricke lacked standing. *See*, *e.g.*, *Hammes v. Brumley*, 659 N.E.2d 1021, 1030 (Ind. 1995) (holding bankrupt party had standing to sue and motion to amend complaint to substitute name of bankruptcy trustee as real party in interest related back to filing of original complaint).

# Conclusion

The trial court did not abuse its discretion when it denied Red Lobster's motion to strike Fricke's affidavit. The trial court also did not err when it denied Red Lobster's motion for summary judgment because Fricke had

standing to bring suit in her own name and a genuine issue of material fact exists regarding whether Fricke intentionally concealed her personal injury lawsuit from the bankruptcy court. Therefore, we affirm the trial court.

[27] Affirmed.

Mathias, J., and Tavitas, J., concur.